## A02A0005. TATE v. THE STATE.
(564 SE2d 495)

JOHNSON, Presiding Judge.

Quanton Tate appeals from his armed robbery conviction, challenging the sufficiency of the evidence to support the conviction, and arguing that the trial court erred in denying his motion for mistrial after the state allegedly placed his character in evidence. Because the evidence was sufficient and Tate's character was not placed in evidence, we affirm his conviction.

1. Tate contends that the state failed to prove his guilt because the victim's identification of him as one of the three armed robbers was not reliable. Specifically, Tate says that the victim told police that the third robber was 4'7" tall, 16 years old, and wore braids, when Tate claims that the evidence at trial shows he is 5'7" tall, appears to be 22 years old or older, and has never worn braids.

On appeal, a defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict. We do not weigh the evidence or determine witness credibility. Instead, an appellate court determines whether the evidence is sufficient to convict the defendant beyond a reasonable doubt. Conflicts in witness testimony are a matter of credibility for jury resolution. And as long as some competent evidence is presented to support every fact necessary to make out the state's case, even though contradicted, we will not disturb the jury's verdict.[1]

Viewed in a light most favorable to the verdict, the evidence shows that the victim was a deliveryman who went to the Baker Village apartment complex to deliver pizza. While walking down a path to apartment 26, the victim saw three men sitting on the stoop of apartment 25. He passed within about two to three feet of the men and spoke to them. Upon discovering that apartment 26 was vacant, the victim turned to leave. The men approached the victim and demanded that he drop the pizzas and money. The victim asked: "for what? . . . you're going to shoot me over pizza and hot wings?" The men told the victim they were serious, and all three men pulled out handguns and ordered the victim to lie down. The victim refused to cooperate. The men reminded the victim that they were not "playing" and that they would shoot him. Although "[i]t took them a long time to get [him] to get on the ground," the victim eventually complied with the gunmen's requests. The men took the victim's wallet from his pocket and ran.

Moments later, the victim went to the police station and reported the crime, giving detailed descriptions of each man's cloth-

---

[1] *Moten v. State*, 252 Ga. App. 222 (1) (554 SE2d 553) (2001).

ing, height, weight, complexion, and hair, as well as descriptions of their weapons. The victim testified that he was able to describe the assailants in such detail because he recognized them from previous deliveries to the apartment complex and he walked within two to three feet of them in a well-lit area. The victim testified that he did not describe any of the assailants as 4'7", but described the shortest of the three individuals as 5'8" to six feet tall. When the detective showed the victim an array of photographs of suspects about four days after the incident, the victim told him that his assailants were not pictured. The same thing happened at a second lineup. At a third photographic lineup about two weeks after the incident, though, the victim immediately picked Tate's photograph out of the group, without any hesitation or equivocation. This was the only lineup which contained Tate's photograph. And, at trial, the victim testified that he was "100 percent sure" that Tate was one of the men who robbed him. As they were authorized to do, the jurors in this case chose to believe the victim's testimony identifying Tate as one of the men who committed the armed robbery.[2]

We point out that the jury was free to disbelieve the testimony of Tate's cousin that Tate was with him at the time of the robbery.[3] Moreover, despite the defense's testimony that the area was too dark for the victim to see his assailants, the jury was authorized to believe the victim's testimony that the area was sufficiently lit and he was close enough that he could see them clearly; and the jury was authorized to believe that the victim's identification was aided by the fact that he had seen the men before. Reviewing the evidence in the light most favorable to the jury's verdict and leaving evidentiary weight and witness credibility to the jury, we find that a rational trier of fact could have found Tate guilty beyond a reasonable doubt of the crime of armed robbery.[4]

2. Tate contends that the trial court should have declared a mistrial because his character was improperly placed in evidence during the state's examination of the police detective. At issue is the following colloquy:

> [STATE:] And what did you do in relations to [your investigation]?
> [WITNESS:] I went and started my investigation. I personally maintain a working file of photos of people that we've had dealings with in the past for armed robberies or people

[2] See *DeLoach v. State*, 272 Ga. 890, 891 (1) (536 SE2d 153) (2000).
[3] See generally *Thorne v. State*, 246 Ga. App. 741 (1) (542 SE2d 157) (2000).
[4] See *White v. State*, 244 Ga. App. 54, 56 (2) (537 SE2d 364) (2000).

suspected of armed robberies. I don't know maybe 150 folks in there.
[STATE:] Okay.
[WITNESS:] And I had took a photo lineup, the first one did not include the defendant, went to the victim, this was around the first of March, second of March. He did [sic] identify anybody. I went back —.

Defense counsel moved for a mistrial, claiming the detective's testimony indicated that Tate had been suspected in or convicted of other robberies. In denying the motion for mistrial, the trial court stated that the testimony did not indicate that Tate's photograph was in the detective's file or that Tate had committed a prior robbery. A mistrial was not required.

Our courts have previously held that a defendant's character is not improperly placed into evidence by a police officer's testimony that he took the defendant's picture " 'from our [police] file,' "[5] by a detective's testimony that a defendant's picture used in a photographic lineup was " 'the arrest photo on file,' "[6] or by an officer's testimony that the defendant's relatives alerted him to the fact that the defendant " 'had been arrested before for a similar incident.' "[7] Nor is a defendant's character impugned by an officer's testimony that he displayed a lineup of "jail photographs" to a witness, where the officer never intimated that the defendant's picture was in that group.[8] Here, the detective's testimony did not place Tate's character at issue.

The cases relied on by Tate do not require a contrary result. The facts in this case are unlike in *Anderson v. State*,[9] where a mistrial was required because an officer testified that he knew the defendant because his name was on a list of suspected drug dealers. The detective here did not say that Tate was in his file of suspected armed robbers. And, unlike in *Jinks v. State*,[10] the evidence at issue did not show that the defendant had prior arrests. Instead, the detective here simply testified that he maintained a file of photographs of people with whom the police had dealt regarding armed robberies, or whom the police had suspected of armed robbery, that he took a

---

[5] *Woodard v. State*, 234 Ga. 901, 902 (2) (218 SE2d 629) (1975); see *Taylor v. State*, 179 Ga. App. 676, 677 (347 SE2d 363) (1986).

[6] *Johnson v. State*, 247 Ga. App. 157, 165-166 (14) (543 SE2d 439) (2000).

[7] Id.

[8] *Taylor v. State*, 272 Ga. 559, 561 (2) (b) (532 SE2d 395) (2000).

[9] 252 Ga. 103 (312 SE2d 113) (1984).

[10] 229 Ga. App. 18, 19 (2) (493 SE2d 214) (1997) (mistrial required where court admitted defendant's fingerprint card showing arrest years earlier – complete with date and charges).

photo lineup (which did not include Tate) to the victim, and that the victim identified no one at that time. The detective eventually testified that the victim picked Tate's photograph out of a third array ten days later. The detective never testified that Tate's picture was in the file of people the police "had dealings with in the past" or suspected of armed robberies. In fact, the detective did not indicate where Tate's photograph came from. The trial court did not abuse its discretion in refusing to grant mistrial.[11]

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED APRIL 16, 2002.

*William J. Mason*, for appellant.

*J. Gray Conger, District Attorney, Alonza Whitaker, Assistant District Attorney*, for appellee.

