## A03A1228. LOVELACE v. THE STATE.
(586 SE2d 386)

MIKELL, Judge.

After a jury trial, Timothy Lovelace was convicted of burglary. Lovelace contends that the trial court erred in (i) not allowing him to represent himself; (ii) admitting hearsay; (iii) removing him from the courtroom during trial; (iv) failing to recharge the jury concerning his right not to testify; and (v) requiring him to wear a "stun belt" during trial. Lovelace also claims that the evidence was insufficient to support the verdict and that he was denied effective assistance of counsel. We affirm for the reasons set forth below.

---

Viewed in the light most favorable to the verdict,[1] the evidence shows that Lovett Thornton had just arrived at work when he received a telephone call from his neighbor, Jessie Malone. Malone told Thornton that he needed to come home because she had just seen someone running from the back of Thornton's house, "carrying something." It took Thornton about 12 minutes to drive home. He arrived to find his house ransacked and his property missing, including a radio, a jewelry box, a VCR, a chrome two-shot Deringer pistol, and a ten-gallon jar full of change. When Thornton walked back out of the house he saw Malone, who told Thornton that the man she had seen was wearing camouflage clothing with a hat over his face, and that the intruder ran from the back of the house through the woods.

Thornton decided to search the woods to see if the burglar had dropped anything. About 200 yards into the woods Thornton found a bed sheet stacked with property taken from his home. A man was there grabbing change and putting it into his pockets. Thornton looked the man "dead in the face" and recognized him as "Tim-Tim," which was Lovelace's nickname. Lovelace ran away.

Thornton testified that Malone's description of the man leaving his house matched the person he saw in the woods, and that the man's hat came off as he ran away. A witness identified the hat as belonging to Lovelace. Lovelace's fingerprints were found on the jewelry box taken from Thornton's home. On the same day that Thornton's house was burglarized, Lovelace tried to sell a chrome two-shot Deringer pistol to a West Point Police undercover officer.

1. Lovelace claims that the evidence was insufficient to support the verdict. We disagree. Burglary is committed when a person enters the dwelling house of another, without authority and with the intent to commit a felony therein.[2] "Recent unexplained possession [of the stolen property] is probative evidence which must be reviewed along with other evidence in the case to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt."[3] Given that Thornton saw Lovelace with the stolen property minutes after the burglary occurred, and the other evidence connecting Lovelace to the stolen property, without explanation, a rational trier of fact could find Lovelace guilty of burglary.[4]

2. Lovelace claims the trial court erred in allowing inadmissible hearsay. Specifically, Lovelace contends that the trial court should not have allowed Thornton to testify that Malone told him that she saw someone running from Thornton's house or as to Malone's

---

[1] *Barber v. State*, 235 Ga. App. 170 (509 SE2d 93) (1998).
[2] OCGA § 16-7-1.
[3] (Footnote omitted.) *Gray v. State*, 260 Ga. App. 197, 198 (1) (581 SE2d 279) (2003).
[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

description of the person. The trial court allowed the hearsay as part of the res gestae. Declarations which accompany an act, or are so connected with the act in time as to be free from all suspicion of device or afterthought, are admissible in evidence as part of the res gestae.[5] "[S]uch declarations[ ] must be contemporaneous with the main fact, but need not be precisely concurrent in point of time; it is sufficient if such declarations spring out of the transaction, if they elucidate it, if voluntary and if made at such time as reasonably to exclude the idea of design."[6] The admissibility of declarations as part of the res gestae is left to the sound discretion of the trial court, considering the time, circumstances, and statements in question.[7]

Malone's declarations are substantially contemporaneous with the event. Thornton left for work at about 7:50 a.m. He arrived 15 minutes later and shortly thereafter received the telephone call from Malone informing him that she had seen an intruder. Thornton went home immediately, arriving between 8:20 and 8:30 a.m., where Malone gave him a description of the intruder. We find this case to be analogous to those in which statements by bystanders to a crime or an automobile collision made shortly after the event have been found to fall within the res gestae exception to the hearsay rule.[8] We cannot say it was an abuse of the trial court's discretion to allow Thornton to testify as to Malone's statements.

3. Lovelace claims the trial court erred in not allowing him to represent himself and in not delaying the trial with direction for this purpose. However, the record does not reflect that the trial court prevented Lovelace from representing himself. Lovelace expressed dissatisfaction with his trial counsel before the jury was selected and then the following day immediately before the start of the trial. The trial court explained to Lovelace that the trial would proceed and that Lovelace could either represent himself or be represented by his appointed counsel. The trial court asked Lovelace if he wanted to represent himself. After Lovelace answered "yes," the trial court explained to Lovelace what self-representation would entail, at which point Lovelace admitted that he was unable to represent himself, but that he did not want his trial counsel to represent him either. The trial court then told Lovelace's trial counsel to go ahead with opening statements and cross-examination of witnesses. "[T]here was no error arising in this indigent defendant being con-

[5] OCGA § 24-3-3.

[6] (Citations and punctuation omitted.) *Brown v. City of Fitzgerald*, 177 Ga. App. 859, 862 (3) (341 SE2d 476) (1986).

[7] *Ward v. State*, 186 Ga. App. 503-504 (1) (368 SE2d 139) (1988).

[8] *Gilbert v. State*, 241 Ga. App. 57, 60 (3) (526 SE2d 88) (1999); *Espy v. State*, 246 Ga. App. 1, 2 (2) (539 SE2d 513) (2000); *Couch v. State*, 246 Ga. App. 106, 108 (2) (b) (539 SE2d 609) (2000).

fronted with choosing between representation by the appointed defense counsel and proceeding pro se."[9] The trial court did not prevent Lovelace from representing himself because Lovelace admitted he was unable to do so.

4. Lovelace claims the trial court erred in forcibly removing him from the courtroom during jury selection. We disagree. Before jury selection began, Lovelace began interrupting the trial court, protesting that his appointed attorney was not his representative and that, "[y]ou're going ahead because I ain't. The only way I'd go, you'd bust my head open." Lovelace was removed in front of the prospective jury, which was then excused and Lovelace brought back into the courtroom. The trial court told Lovelace that he could stay in the courtroom if he would be quiet, but Lovelace remained extremely argumentative. Lovelace was removed, then brought back and given another chance to remain, but continued to repeat that his trial counsel was not representing him, and so was removed for a third time and the jury was selected without him. Lovelace was brought back to the courtroom the next day and remained for the rest of the trial.

A defendant's right to be present for all stages of his trial is a substantial and important right.[10] This right may, however, be waived in some circumstances.[11] In the case of disruptive behavior in the courtroom,

> a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concepts of courts and judicial proceedings.[12]

Applying this standard, we conclude that the trial court acted properly in removing Lovelace for a portion of the trial proceedings.

---

[9] *Durham v. State*, 185 Ga. App. 163, 164 (1) (363 SE2d 607) (1987). See also *Howard v. State*, 251 Ga. App. 243, 244-245 (6) (553 SE2d 862) (2001) (ordering trial to go ahead with defendant's original counsel because dismissing counsel three days before trial was to begin was a dilatory tactic).

[10] *Pierce v. State*, 47 Ga. App. 830, 831 (171 SE 731) (1933).

[11] See *State v. Fletcher*, 252 Ga. 498 (314 SE2d 888) (1984).

[12] (Punctuation omitted.) Id. at 499-500, quoting *Illinois v. Allen*, 397 U. S. 337, 343 (90 SC 1057, 25 LE2d 353) (1970).

5. Lovelace claims the trial court erred by failing to recharge the jury that he was not required to testify and that the jury should not make any adverse inferences against him for not testifying. Lovelace maintains that the recharge was required because of a note that a juror sent to the trial court stating that: "To make my decision please if possible get this answer from Timothy Lovelace. What was his reason for being on Mr. Thornton's property at this time and why did he run when Mr. Thornton approached him?"

Although the note appears in the record, the transcript does not record the trial court's response to the note. The state does not dispute Lovelace's contention that no supplemental charge was given. Lovelace does not show that he requested one. In the motion for new trial, Lovelace testified that he remembered that the trial court received a note from a juror and that the trial court said that he could not respond to the note.

Relying on *Edwards v. State*,[13] Lovelace argues that it was the duty of the trial court to reinstruct the jury as to the absence of an adverse inference to be taken from Lovelace's failure to testify. In *Edwards*, the jury asked the trial court for a recharge and the trial court refused to give one. Our Supreme Court ruled that the trial court erred in not recharging the jury because if the jury requests a recharge on any issue, it is the court's duty to do so.[14] Here, however, the jury did not ask for a recharge. Supplemental instructions to the jury are generally within the discretion of the trial court.[15] In these circumstances, we cannot say that it was an abuse of discretion for the trial court to decline to further instruct the jury.

6. Lovelace claims he received ineffective assistance of counsel.

Generally, the burden is on the defendant claiming ineffective assistance of counsel to establish (1) his attorney's representation in specified instances fell below an objective standard of reasonableness *and* (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.[16]

---

[13] 233 Ga. 625 (212 SE2d 802) (1975).

[14] Id. at 626 (2).

[15] See *Taylor v. State*, 169 Ga. App. 842, 844 (2) (315 SE2d 661) (1984).

[16] (Citation omitted; emphasis in original.) *Ramey v. State*, 239 Ga. App. 620, 622 (2) (521 SE2d 663) (1999). See also *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

(a) Lovelace complains that his trial counsel failed to object to the trial court's refusal to allow him to represent himself. As discussed above, the trial court did not refuse to allow Lovelace to represent himself.

(b) Lovelace also maintains that his counsel was not prepared for trial because he did not meet with Lovelace for "months" before the trial began and because he did not interview Malone. However, trial counsel stated that he met with Lovelace on at least three occasions. Lovelace has not shown by reference to the record that his trial counsel was not prepared for trial. Nor can we say that no reasonable lawyer would have failed to interview Malone.

> The test for reasonable attorney performance has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.[17]

(c) Lovelace claims he received ineffective assistance because trial counsel submitted the report of the police investigation into evidence. We agree, but find that a reversal is not required.

Defense counsel cross-examined Officer Byron Hadley, an investigator for the Troup County Sheriff, by reading verbatim from a case summary that Hadley had prepared. The prosecutor objected, saying that the defense counsel should not be allowed to read from a document that was not in evidence. Lovelace's counsel then offered the report into evidence, and it was admitted.

Defense counsel testified during the motion for a new trial that he had no memory of his thought processes in examining Hadley about the report. The only motive given by defense counsel for introducing the report into evidence was to show "confidence" in his client's case after the prosecutor suggested that the entire report be placed in evidence. Defense counsel did not want the jury to think that he was "trying to hide something."

We will not generally second-guess counsel on matters of trial strategy. For instance, in *Conger v. State*,[18] we found defense counsel's purposeful failure to redact three statements from a large medical report to be a matter of strategy, and unchallengeable, even

---

[17] (Citation and punctuation omitted.) *Boyd v. State*, 275 Ga. 772, 776 (3) (573 SE2d 52) (2002).

[18] 245 Ga. App. 399 (537 SE2d 798) (2000).

though the statements implicated the defendant.[19] But defense counsel here obviously had no predetermined plan to introduce the police report. Nor could he articulate what he wanted to show, other than his "confidence," by introducing the report.

The case summary states, in part, that a police informant was contacted by a third party who told the informant that Lovelace had just committed a burglary, that Lovelace needed to get out of town, and that Lovelace wanted the informant to take him to Lanett, Alabama. Because the report implicates Lovelace and contains information that does not appear to have been otherwise admissible, and provides no articulable benefit to Lovelace other than the trial counsel's effort to "show confidence" in Lovelace's case, we must conclude that no reasonable trial attorney would have introduced this report into evidence on behalf of Lovelace.

Given the strength of the evidence against Lovelace, however, we cannot find that but for trial counsel's unprofessional error there was a reasonable probability that the results would have differed, and no reversal is warranted.[20]

(d) Lovelace claims he received ineffective assistance of counsel because his trial counsel failed to ask for a curative instruction that the jury not infer guilt from Lovelace's disruptive actions in the courtroom. After the prosecutor suggested it, defense counsel stated that he did not want such an instruction because it would focus the jury's attention on the matter. Counsel's decision was a matter of trial strategy and does not amount to ineffective assistance.[21] Furthermore, Lovelace stated his acquiescence to the defense counsel's advice that the jury not be given curative instructions.

(e) Lovelace claims trial counsel rendered ineffective assistance by failing to move for a mistrial after hearsay evidence was admitted. However, Lovelace objected to the hearsay. And as we ruled above, the hearsay was admissible. Trial counsel was not ineffective in this matter.

(f) Lovelace claims ineffective assistance because his trial counsel failed to request a charge on the lesser included offense of possession of stolen property. "Decisions as to which charges will be requested and when they will be requested fall within the realm of trial tactics and strategy. They provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them."[22] We cannot say that failure

---

[19] See id. at 401 (3) (c).

[20] See, e.g., *O'Brien v. State*, 242 Ga. App. 344, 346-347 (2) (529 SE2d 657) (2000).

[21] See *Conger*, supra.

[22] (Citation omitted.) *Champion v. State*, 238 Ga. App. 48, 49 (1) (b) (517 SE2d 595) (1999).

to request a charge on a lesser included offense was patently unreasonable in this case.

(g) Lovelace also claims ineffective assistance because his trial counsel failed to object to Lovelace's exclusion from the courtroom during jury selection and because trial counsel failed to object after a juror sent the trial court a note requesting an explanation as to why Lovelace was on Thornton's property. These issues are discussed above. Trial counsel does not provide ineffective assistance by failing to make a meritless objection.[23]

7. Lastly, Lovelace claims the trial court erred in requiring that Lovelace wear a stun belt. During the hearing on motion for new trial, the trial court acknowledged that he authorized Lovelace to be fitted with such a device. The trial court characterized Lovelace's behavior as "more than disruptive," but as "outright belligerent." The trial court further explained, "I believe that my thinking at the time was his appearing in the courtroom and being in this trial was more important than any restriction that that belt put on him. That belt put no restriction on him unless he got out of hand."

In considering the use of such restraints, our Supreme Court has held "that utilization of a remedial electronic security measure shielded from the jury's view is permissible where the defendant fails to show that he was harmed by its use."[24] Lovelace does not show that the device was visible to the jury. Lovelace contends that he was harmed because he felt, as he testified in the motion for a new trial, "a lot of restrictions in expressing myself in an open manner." Lovelace further testified that wearing the belt made him feel restricted as far as getting up and moving around. At the motion for new trial, counsel asked Lovelace if wearing the belt affected Lovelace's communications with his trial attorney or his decision not to testify, but Lovelace's answers were not clearly responsive. It also appears from the hearing on motion for new trial that Lovelace's trial attorney was not aware until after the trial that Lovelace had been outfitted with a restraint. However, it does not appear that trial counsel would have had a valid objection to the use of the device. In our view, the record does not show that Lovelace was harmed as a result of wearing the stun belt.

In a decision relied upon by Lovelace, the Eleventh Circuit Court of Appeals, in *United States v. Durham*,[25] has recently ruled that, "[i]f a stun belt is to be used to restrain a particular defendant, a court

---

[23] See *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001).

[24] (Citation omitted.) *Young v. State*, 269 Ga. 478, 479 (2) (499 SE2d 60) (1998). See also *Stanford v. State*, 272 Ga. 267, 271 (8) (528 SE2d 246) (2000); *Brown v. State*, 268 Ga. 354, 359-360 (7) (490 SE2d 75) (1997).

[25] 287 F3d 1297 (11th Cir. 2002).

must subject that decision to careful scrutiny."[26] The court held that a trial court must, among other things, make factual findings about the belt's operation, consider alternate methods of restraint, and make a finding on the record that the use of the device is necessary in that particular case. These procedures were not followed here. The decisions of our Supreme Court do not, however, require a trial court to make these findings,[27] and we need not reverse on account of the trial court's failure to do so.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 12, 2003 — 

*John G. Wolinski*, for appellant.

*Peter J. Skandalakis, District Attorney, Sarah L. Stimac, Assistant District Attorney*, for appellee.

---

[26] Id. at 1309.
[27] See *Young*, supra.