**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 3, 2013

# In the Court of Appeals of Georgia

A13A0173. CLAY v. THE STATE.

PHIPPS, Presiding Judge.

Michael Clay appeals his convictions for aggravated assault and serious injury by vehicle. He contends that the trial court erred by denying his motions for a mistrial – one made prior to the jury being sworn, and another made during the state's presentation of the evidence. We affirm.

Clay was charged in a 17-count indictment with crimes, including false imprisonment, robbery, aggravated sexual battery, murder, kidnapping with bodily harm, rape, aggravated sodomy, and aggravated assault, allegedly committed from 2000 to 2006. Clay moved to sever the offenses for trial. The trial court issued an order pertinently stating, "The District Attorney has agreed that severance would be appropriate. In that the parties are in agreement, the Court will enter a finding that the offenses alleged are factually distinguishable but cognizable generally when grouped

as related incidents." Accordingly, the trial court granted the motion to sever, while joining certain specified offenses for trial.

A redacted indictment showed that Counts 16 and 17 from the original indictment, which alleged offenses of aggravated assault committed against D. B. and K. W., respectively, were tried together in this case. As to the charge of aggravated assault involving D. B., the jury found Clay guilty of the lesser included offense of serious injury by vehicle; as to the aggravated assault involving K. W., the jury found Clay guilty as charged.

1. Clay complains that the trial court erred by denying his first motion for a mistrial, made after several impaneled jurors affirmed that they had been exposed to a newspaper article about the case.

> The trial court has a broad discretion in passing on motions for mistrial, and its ruling will not be disturbed by the appellate courts unless it appears that there has been a manifest abuse of discretion and that a mistrial is essential to the preservation of the right to a fair trial. Where a motion for mistrial is made on the ground of inadmissible matters being placed before the jury, the corrective measure to be taken by the trial court also is largely a matter of discretion, and where proper

corrective measures are taken and there is no abuse of that discretion, the refusal to grant a mistrial is not error.[1]

On Monday, May 11, 2009, after a jury had been impaneled, court proceedings in the case ended for the day and the jury was excused until the following Monday. On Monday, May 18, 2009, court proceedings in the case resumed, and the following occurred. Outside the presence of the jury, defense counsel notified the court that the day after the jury had been impaneled, an article about the case was published in a local newspaper;[2] defense counsel asked the trial court to "give a general voir dire of the jury and ask them if they have heard or read anything about the defendant since jury selection. If there is a positive response, I would ask that that juror or jurors be

---

[1] *Edwards v. State*, 200 Ga. App. 580, 582 (1) (408 SE2d 802) (1991) (citations and punctuation omitted).

[2] The headline of the article read: "Trials begin with assault." The article stated that there were 17 criminal counts against Clay which were "broken up" because not all were related, that Clay was suspected of being a serial rapist, and that Clay was facing charges that included murder. The article stated that Clay was suspected of a 2006 murder in which a woman was brutally attacked, lapsed into a coma, never regained consciousness, and died; and that according to reports in an earlier edition of the newspaper, DNA evidence allegedly connected Clay to attacks on three other women who had reported being beaten, kicked, and sexually assaulted in 2000 and 2003.

individually voir dired." The prosecution had no objection to defense counsel's request.

The jury was brought into the courtroom, and the trial court inquired as follows:

> I welcome you back to this term of court, this week of court, the second week of a two-week session. And I have several questions to ask you and I'll ask you to please respond by raising your hand. It may have been an article in the newspaper or on the television during that last week concerning this case. Did anyone happen to see that?

Five jurors raised their hands. The trial court excused all the jurors from the courtroom and individually called into the courtroom each of the five jurors who had raised his or her hand. Two of the jurors said they had noticed the article but had not read it; one juror said he had not read the article but had read the headline and had seen that there were more charges than the two that were mentioned during jury selection; another juror said that her mother had read the article and told her that the defendant had been charged with "something like" 19 counts; and another juror said that she had read the article. Defense counsel moved for a mistrial, asserting that the article had "undone the severance." The trial court denied the motion. Thereafter, the jury entered the courtroom and was sworn.

"The time for making a motion for mistrial is not ripe until the case has begun, and the trial does not begin until the jury has been impaneled and sworn. Therefore, the trial court correctly refused to declare a mistrial."[3] "However, this court has held that even though the counsel failed to follow the correct procedure or to use the proper procedural tool, we will not rely upon his inaccurate nomenclature, where the relief sought in a motion is clear."[4] Because Clay's motion for mistrial came after each exposed juror had been individually examined, we view the motion as a challenge to the poll, which is "directed solely to an objection . . . in [an] individual juror."[5]

> Challenges to the poll, the individual juror, are either peremptory or for cause. Challenges for cause are made in one of two forms -- for principal cause or for favor. Principal cause is disqualification based on the

---

[3] *Sharpe v. State*, 272 Ga. 684, 687 (5) (531 SE2d 84) (2000) (citations and punctuation omitted).

[4] *Swint v. State*, 199 Ga. App. 515, 516 (405 SE2d 333) (1991) (citations and punctuation omitted); *Sharpe*, supra at 687 (5) (recognizing existence of authority for disregarding the nomenclature of a defendant's premature motion for mistrial when the import of the motion is clear); *Hughey v. State*, 180 Ga. App. 375, 377-378 (2) (348 SE2d 901) (1986).

[5] *Thompson*, 109 Ga. 272, 279 (34 SE 579) (1899) (citation omitted); *Cauley v. State*, 130 Ga. App. 278, 281 (1) (a) (203 SE2d 239) (1973) ("A challenge to the poll is one peremptory or for cause, addressed to an individual juror.") (citation omitted).

5

grounds enumerated in OCGA § 15-12-163, i.e., the juror is not a citizen, is under 18 years of age, is incompetent because of mental illness, retardation or intoxication, or is so near in kinship to the prosecutor or accused as to disqualify him. Challenges for favor, in a criminal case, are based on admission by the juror that he is biased for or against one of the parties, in response to questions authorized by OCGA § 15-12-164, i.e., whether the juror has formed and expressed an opinion as to the guilt or innocence of the accused, has prejudice or bias for or against the accused, is perfectly impartial between the state and the accused, and in capital felony cases is not conscientiously opposed to capital punishment. We are confronted here with challenges for favor. Whether to strike a juror for favor lies within the sound discretion of the trial court, and absent manifest abuse of that discretion, appellate courts will not reverse.[6]

For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's charge upon the evidence. . . . A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference.[7]

---

[6] *Harris v. State*, 178 Ga. App. 735, 736 (1) (344 SE2d 528) (1986) (citations omitted).

[7] *Huckabee v. State*, 287 Ga. 728, 730 (2) (699 SE2d 531) (2010) (citation omitted); *Barnes v. State*, 269 Ga. 345, 351 (7) (496 SE2d 674) (1998) ("In order to disqualify a juror for cause, it must be established that the juror's opinion was so

The trial court questioned the five jurors individually to ascertain whether any of them had been prejudiced by their exposure to the newspaper article. "The record show[ed] that none of these [five] jurors had fixed opinions about [Clay]'s guilt or any other issue in the trial."[8] None of the five jurors stated that he or she had formed, nor had any of them expressed, an opinion as to Clay's guilt or innocence. "The burden is on him who asserts error to show it affirmatively by the record."[9] Clay has not met his burden. In his appellate brief, Clay concedes that each of the jurors who had been exposed to the newspaper article indicated that he or she could render a fair, unbiased decision based solely on the evidence presented. "We find that no prospective jurors were erroneously qualified to serve due to their exposure to pretrial

---

fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence.") (punctuation and footnote omitted); *Deyoung v. State*, 268 Ga. 780, 784 (4) (493 SE2d 157) (1997) (same).

[8] *Barnes*, supra.

[9] *Roach v. State*, 221 Ga. 783, 786 (4) (147 SE2d 299) (1966).

publicity."[10] Based on the jurors' responses, the jurors were not disqualified, and the trial court did not abuse its discretion in failing to strike any of the five jurors.[11]

2. Clay contends that the trial court erroneously denied his second motion for a mistrial, made after a law enforcement officer testified as to evidence of an unrelated homicide.

---

[10] *Cromartie v. State*, 270 Ga. 780, 784 (9) (a) (514 SE2d 205) (1999) (citations omitted) (trial court did not err by failing to excuse for cause prospective jurors who had been exposed to pretrial publicity but were qualified to serve; jurors either had no opinion about the case or could lay aside their opinion and render a verdict based solely on the evidence and the trial court's instructions); *Lawler v. State*, 276 Ga. 229, 235 (5) (576 SE2d 841) (2003) (trial court did not err in denying defendant's motion to excuse for cause several prospective jurors who indicated they had some exposure to pretrial news reports, but that the exposure was limited and that they could set aside anything they had heard or seen and base their personal verdicts only on the evidence presented in the courtroom); *Barnes*, supra (trial court did not err in failing to excuse for cause six prospective jurors due to pretrial publicity; record showed that none of the six jurors had fixed opinions about the defendant's guilt or any other issue in the trial); *Williams v. State*, 222 Ga. 208, 213 (4) (149 SE2d 449) (1966) (holding that reports of the news media -- newspapers, radio, and television -- in the investigation of the crime by reports and pictures with detailed accounts and descriptions as to individuals alleged to be involved, their past criminal history and quoted opinions of officers and prosecution officials, may be read or heard by prospective jurors in the county where the crime was committed, and such did not disqualify a juror from serving if on the voir dire the juror answered in the negative the questions propounded to the juror under OCGA § 15-12-164).

[11] See generally *Hughey*, supra (trial court did not abuse its discretion in refusing to grant prematurely requested mistrial, and in failing, sua sponte, to dismiss the venire).

8

Specifically, Clay challenges evidence introduced through the following colloquy:

Q. On or about February the 15th of 2006, did you become aware of a victim by the name of [K. W.] and another victim by the name of [D. B.]?

A. Yes, I did.

Q. And how was it that you became aware of these two people?

A. We were currently focusing on a homicide that was unrelated to this incident that had occurred when Deputy [Name] approached me with someone that he thought may have some information regarding to the homicide that we were currently working that's unrelated to this incident.

Defense counsel moved for a mistrial, arguing that the officer's testimony impermissibly connected Clay to a homicide, and that "there are five people on this jury that know something about a homicide in connection with Michael Clay." On appeal, Clay asserts that the officer's testimony "informed [the jury] of Clay's connection to a murder, which . . . had been severed out of this trial," and that the testimony "prejudiced Clay by placing his character into evidence."

To the extent that the same objection launched at trial is the objection urged on appeal, "[o]ur duty as an appellate court is to correct errors alleged to have been made at trial by the trial court and not to manufacture them."[12] The foregoing testimony did not connect Clay with a murder, inasmuch as it indicated that an unnamed individual may have had information about two unrelated crimes. "[Clay] merely speculates that this testimony had a malignant effect upon the jury. This enumerat[ed error] is without merit."[13] We see no abuse of discretion in the trial court's refusal to grant a mistrial on this basis.[14]

*Judgment affirmed. Ellington, C. J., and Branch, J., concur.*

---

[12] *Edwards*, supra at 583 (2) (citations and punctuation omitted).

[13] Id. (citation omitted).

[14] See generally *Tate v. State*, 255 Ga. App. 82, 84 (2) (564 SE2d 495) (2002) (trial court did not abuse its discretion in refusing to grant mistrial; defendant's character was not impugned or placed at issue by an officer's testimony that he displayed a lineup of "jail photographs" to a witness, where the officer never intimated that the defendant's picture was in that group); *Foster v. State*, 190 Ga. App. 686, 688 (2) (379 SE2d 634) (1989) (no error in trial court's refusal to grant a mistrial after the introduction of evidence that defendant had been charged with another crime unrelated to the sexual assault at issue at trial; the record shows that, while counsel for defendant realized immediately that the witness was referring to a hearing for a crime other than that ruled admissible because of its similarity, neither the prosecutor nor trial judge realized the testimony referred to a separate criminal proceeding until that fact was brought out during a hearing outside the presence of the jury; considering the totality of the circumstances, there was no harmful effect upon the jury).