**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 29, 2025**

# In the Court of Appeals of Georgia

A25A0513. GARRETT v. THE STATE.

DAVIS, Judge.

A Bartow County jury found Gabriel Garrett guilty of aggravated child molestation, influencing a witness, and other related offenses. Garrett appeals from the denial of his motion for new trial, arguing that the trial court erred by (1) requiring him to wear a shock belt without first making certain findings; and (2) denying his motion for mistrial after a juror observed him wearing the shock belt and discussed it with the other jurors. For the reasons that follow, we affirm Garrett's convictions, sentence, and the denial of his motion for new trial.

The record shows that Garrett was indicted on two counts of aggravated child molestation (OCGA § 16-6-4 (c)), six counts of child molestation (OCGA § 16-6-4

(a)), one count of enticing a child for indecent purposes (OCGA § 16-6-5), two counts of influencing a witness (OCGA § 16-10-93), two counts of making a false statement (OCGA § 16-10-20), six counts of criminal attempt to commit a felony (OCGA § 16-4-1), and six counts of criminal solicitation (OCGA § 16-4-7). The charges were based on allegations that Garrett: touched the minor victim's breasts and private parts, performed sexual acts on the minor victim and had the minor victim perform sexual acts on him, hindered the minor victim's contact with law enforcement, made false statements to law enforcement, attempted to influence the minor victim's testimony, and sought someone to kidnap the minor victim. The case proceeded to a jury trial in December 2016, but a mistrial was declared after Garrett made an "outburst" in the presence of the jury despite the trial court's prior admonishment, and that one juror had to be excused from the jury because of Garrett's behavior.[1]

Before the retrial, the State filed a "motion to authorize the use of extraordinary security measures." In the motion, the State requested that a shock belt be placed on Garrett due to the nature of the charges, his history of threatening and intimidating

---

[1] The order denying the motion for new trial states that the outburst was Garrett's attempt to perform an exorcism on a witness. Although the facts about the attempted exorcism are not found in the record on appeal outside of the trial court's order, we note that Garrett does not refute these facts in his appellate brief.

witnesses, his "outburst" and "disruptive" behavior during the first trial, and his post-trial conduct where he attempted to contact the victim to influence her testimony. At the hearing before the retrial, the following transpired:

> COURT: At the last trial, Mr. Garrett, despite the [c]ourt's admonishment, there was an outburst in the presence of the jury. And the [c]ourt had what's commonly referred to as the shock belt placed on you. Are you going to sit through the course of this trial quietly and let [trial counsel] represent you? You can certainly confer with her, but she'll be the one that does the talking, except when she directs that you have a conversation with the jury. Can you do that?
>
> GARRETT: Yes, sir.
>
> COURT: How come you couldn't do it last time but you can do it this time?
>
> GARRETT: It's difficult to explain it.
>
> COURT: Can you try?
>
> GARRETT: I would be willing to confer with you in a different setting and explain —
>
> COURT: No, this is the setting in which we're going to confer, Mr. Garrett. I need to know whether or not you're going to assure the [c]ourt that you will sit quietly during the course of this trial and not engage in any outbursts.
>
> GARRETT: Yes.

COURT: You were not able to do that apparently or chose not to do that at the last trial. What's different?

GARRETT: Well, I would say I have had an expansion of knowledge since then. Perhaps I understand a few things differently and a little bit more thoroughly from a different perspective. The trial court then asked a deputy about Garrett's conduct, and the deputy said that Garrett had been cooperative at the courthouse that morning, but his behavior was "different" at the jail. Specifically, Garrett had tried to come out of his holding cell the day prior, and he had been placed on suicide watch. The trial court also questioned the lead investigator on the case, and she said that Garrett had to be isolated at the jail because he was caught masturbating while other inmates visited with female visitors.

Trial counsel objected to the use of a shock belt and argued that Garrett would exhibit "debilitating" and "embarrassing" "physical manifestations" in the presence of the jury if the device was deployed, and she asked the trial court to make ceratin findings in accordance with Justice Nahmias' concurring opinion in *Weldon v. State*, 297 Ga. 537, 541-542 (775 SE2d 522) (2015), before requiring him to wear the device. The trial court asked about alternatives to a shock belt and noted that Garrett had a "track record" despite "long conversations" with him, he still acted out during trial, and Garrett's conduct "appear[ed] to be continuing" despite his statements that he would "behave" during the trial. Trial counsel suggested that "if there were any kind

4

of security concern that [Garrett] either agree to wear the belt or that he agree to be outside." Trial counsel also stated that she preferred for Garrett to wear the belt as opposed to being outside during the trial.

The trial court stated that it was appropriate for a shock belt to be placed on Garrett. The trial court further stated that the shock belt would be invisible to the jury unless Garrett acted "inappropriately," it would be activated "only in the event that [he] attempted to disrupt the court proceedings, with the jury, by an outburst or standing when [he's] not instructed to stand[,] [and] it would not be activated for [him] to talk with [his] counsel . . . to ask questions." The trial court also offered Garrett an alternative, which was for him to observe the trial from his holding cell. Garrett responded that he desired to be present in the courtroom but then asked whether a shock belt was necessary. The trial court responded, "[i]t is the [c]ourt's opinion, and based on prior conduct and the [c]ourt's attempts to ensure a fair trial to everybody and that your due process is protected, the [c]ourt is making a determination that it is appropriate for the shock belt to be worn." Garrett again stated that he desired to be present in the courtroom, and he affirmatively indicated he understood that he would have to wear a shock belt.

The case proceeded to trial, and after a recess, a court deputy informed the trial court that a juror whom he was familiar with sent him a text message and asked whether Garrett was wearing a bulletproof vest. The trial court then questioned the juror outside the presence of the jury about his communication with the deputy, and the juror admitted that he asked whether Garrett was wearing a vest. Trial counsel asked the juror whether he spoke about the vest with the other jurors, and the juror said that he asked them, "you think that he had a vest on," and that they responded that they "[did not] know."[2] Trial counsel then moved for a mistrial. Instead of granting the motion, the trial court stated that it would inform the jury that one of the jurors was dismissed for violating the court's order of "communicating externally of th[e] trial." The court also stated that it would ask the jury whether the removal of the juror would influence their decision and whether they could "listen to the evidence and render a decision based on the evidence that gets presented[.]" Trial counsel then renewed the motion for mistrial, which the trial court implicitly denied. The trial court then polled the jury after they returned to the courtroom:

---

[2] The trial court removed the juror from the jury panel, found him in willful contempt, imposed a $250 fine, and ordered the juror to forfeit his jury pay.

Members of the jury, for your information, the [c]ourt has removed a juror from this jury for violating the [c]ourt's order that you are not to communicate anything to anybody concerning this trial. That juror, in violation of that [c]ourt's explicit order, did so. As a result, the [c]ourt removed that juror from consideration of this case, held that juror in contempt of this [c]ourt, and incarcerated him.

Those instructions are quite serious and they are to be taken quite seriously. The [c]ourt is aware that there may have been some conversation in the jury room or among yourselves by this juror. That's not to imply anyone else necessarily participated, but that inquiry was made.

Is there anyone on this jury that cannot disregard any inappropriate conversation that may have taken place, totally put it out of your mind and render a decision in this case based solely on the evidence that is presented in this courtroom, following the law that the [c]ourt will instruct you? Is there anyone on this jury that feels they cannot do that in light of what's transpired?

None of the jurors responded affirmatively to the trial court's questions, and the trial resumed thereafter.

After the trial, the trial court directed a verdict of acquittal on one count of criminal attempt to commit a felony and one count of criminal solicitation, the jury

acquitted Garrett of four counts of criminal solicitation and four counts of criminal attempt to commit a felony, and Garrett was found guilty of the remaining offenses. The trial court imposed a life sentence, with the first 25 years to be served in confinement and the remainder on probation. Garrett filed a motion for new trial, arguing in part that the trial court erred by requiring him to wear a shock belt and by denying his motion for mistrial after the juror saw the belt and discussed it with the other jurors. The trial court denied the motion without an evidentiary hearing, determining that it (1) did not err by requiring Garrett to wear a shock belt; and (2) properly denied the motion for mistrial because there was no evidence that the removed juror actually saw the belt or that any prejudice occurred.[3] This appeal followed.

1. First, Garrett argues that the trial court erred by requiring him to wear the shock belt without first making certain findings of fact and that there is no evidence

---

[3] A different judge adjudicated the motion than the one who presided at trial. See OCGA § 5-5-43 ("A judge who did not try the case may, if presented with a motion for new trial within 30 days from the date of the verdict or judgment sought to be set aside, allow the filing of, issue rule nisi thereon, and decide the motion either where he is presiding in the court in which the trial was had, or where he is named in the rule, or where he is otherwise authorized by law to do so.").

to support the use of the shock belt. We conclude that the trial court did not abuse its discretion by requiring Garrett to wear a shock belt.

"It is well established that the trial court has broad discretion to take measures necessary to ensure a fair and safe trial." (Citation and punctuation omitted.) *Ward v. State*, 316 Ga. 295, 302 (6) (888 SE2d 75) (2023). Therefore, "the use of extraordinary security measures to prevent dangerous and disruptive behavior which threatens the conduct of a fair and safe trial is within the discretion of the trial court." (Citation omitted.) Id.

OCGA § 15-1-3 (1) provides that "[e]very court has power . . . [t]o preserve and enforce order in its immediate presence and, as near thereto as is necessary, to prevent interruption, disturbance, or hindrance to its proceedings[.]" In light of this statutory provision, the Supreme Court of Georgia has upheld the use of electronic security devices during trial. See *Young v. State*, 269 Ga. 478, 479 (2) (499 SE2d 60) (1998), overruled in part on other grounds, *Whitehead v. State*, 287 Ga. 242, 249 (2) (695 SE2d 255) (2010) ("[Utilization of a remedial electronic security measure shielded from the jury's view is permissible where the defendant fails to show that he was harmed by its use.") (citation omitted). Similarly, this Court has also upheld the

9

placement of electronic devices on defendants during trial. See, e.g., *Lovelace v. State*, 262 Ga. App. 690, 697 (7) (586 SE2d 386) (2003) (approving the use of electronic security devices during trial). It is true that in Justice Nahmias' concurring opinion in *Weldon*, he proposed a four-prong test for courts to use in determining whether to require a defendant to an electronic security device. See *Weldon*, supra, 297 Ga. at 541-542 (Nahmias, J., concurring) (proposing that trial courts must "(1) explain why such an extraordinary security measure is needed to protect the safety and decorum of the proceeding and those participating in it; (2) consider alternative ways to address that need; (3) ensure that the defendant is aware of the operation of the device and, in particular, what conduct by him may lead to a shock; and (4) provide an opportunity for the defendant to address these matters and present any other concerns about use of the shock device"). But we have been clear that "the decisions of our Supreme Court do not require a trial court to make these findings on the record regarding the use of a shock device, and we need not reverse on account of the trial court's failure to do so." (Citation and punctuation omitted.) *Casas v. State*, 368 Ga. App. 434, 438 (2) (890 SE2d 308) (2023).

Applying the aforementioned principles, we conclude that the trial court did not abuse its discretion by requiring Garrett to wear a shock belt during trial. Preliminary, we reject Garrett's argument that a new trial is required due to the trial court's *alleged* failure to make findings of fact in accordance with the four-part test in Justice Nahmias' concurring opinion in *Weldon*. As stated above, trial courts are not required to make those findings of fact before requiring a defendant to wear an electronic security device. *Casas*, supra, 368 Ga. App. at 438 (2). But here, the trial court essentially conducted the four-part test. Specifically, the trial court (1) explained that a shock belt was necessary due to Garrett's prior conduct which "appear[ed] to be continuing"; (2) provided an alternative to the shock belt by allowing Garrett to watch the trial from a holding cell outside of the courtroom; (3) told Garrett how the device would operate and the type of conduct that would lead to a shock; and (4) gave Garrett an opportunity to voice his concerns about the shock belt. See *Weldon*, supra, 297 Ga. at 542 (Nahmias, J., concurring) (stating the trial court "sufficiently" addressed the four-part test in requiring the defendant to wear a shock belt where the trial court told the defendant why a shock belt was necessary and explained the conduct that would result in a shock). We also reject Garrett's argument that there is

no factual basis in the record to show that a shock belt was warranted. The record shows that (1) Garrett made an outburst during the first trial, which apparently consisted of an attempted exorcism in front of the jury, despite the trial court's prior admonishment; (2) the trial court noted that Garrett had a "track record" despite "long conversations" with him and that his and behavior "appear[ed] to be continuing"; and (3) a deputy said that Garrett had tried to come out of his holding cell the day prior and that Garrett had been placed on suicide watch. In light of this record, the trial court did not abuse its broad discretion by requiring Garrett to wear a shock belt during trial. See *Lovelace*, supra, 262 Ga. App. at 697 (7) (no abuse of discretion in requiring the defendant to wear a "stun" belt during trial where the defendant's behavior was characterized as "more than disruptive" and "outright belligerent").

Furthermore, although Garrett told the trial court that he had an "expansion of knowledge" after the first trial and that he would not make any further outbursts, the trial court was not obligated to believe him, especially since he made his outburst in the first trial despite the trial court's prior admonishment, and he provided no

concrete explanation as to why his conduct would be different in the second trial.[4]

Additionally, Garrett's argument that a shock belt was impermissible because he did not exhibit any "violent" behavior is a non-starter. "Violent" behavior is not a precondition to the use of electonic security devices. Indeed, OCGA § 15-1-3 (1) grants trial courts broad discretion to use electronic security devices as a means to prevent any "interruption[s]," "disturbance[s]," or "hindrance[s]" to the proceedings. To hold that violent behavior is a precondition to the use of electronic security devices would require us to add a line to the statute, and we are not permitted to do so. See *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006) ("The doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the legislature. We can not add a line to the law.") (citation and punctuation omitted). Consequently, for all of the foregoing reasons, the trial court did not abuse its discretion by requiring Garrett to wear a shock belt during trial.

---

[4] And contrary to Garrett's argument, we are unaware of any authority, and Garrett does not identify any authority, that required the trial court to make any credibility determinations on the record regarding his assertion that he would cooperate during the retrial.

2. Next, Garrett argues that the trial court erred by denying his motion for mistrial based on the dismissed juror's observation of the shock belt and his discussion of the belt with the other jurors. We disagree.

"The trial court has a broad discretion in passing on motions for mistrial, and its ruling will not be disturbed by the appellate courts unless it appears that there has been a manifest abuse of discretion and that a mistrial is essential to the preservation of the right to a fair trial." (Citation omitted.) *Clay v. State*, 322 Ga. App. 97, 98 (1) (744 SE2d 91) (2013).

As recounted above, a juror sent a text message to a courtroom deputy and asked whether Garrett was wearing a "bulletproof vest." When questioned by trial counsel as to whether he mentioned the vest with the other jurors, the juror responded, "yes[,] [w]e just discussed it." But when pressed about the specific details of that discussion, the juror said that he only asked the jurors whether they thought "that he had a vest on" and that the only response he received was "I don't know."

In light of this record, we conclude that the trial court did not abuse its discretion by denying Garrett's motion for mistrial. We agree with the trial court that there is nothing in the juror's statements to indicate that he actually saw Garrett

wearing the shock belt but rather was merely inquiring out of curiosity as to whether Garrett was wearing a bulletproof vest. Indeed, the record simply reflects that the dismissed juror observed what he believed was a bulletproof vest, and never assumed that the "vest" was a shock device. But even if the dismissed juror saw the device, there is still no evidence in the record to show that the remaining jurors saw the shock belt, or even thought that Garrett was wearing a vest. Although the dismissed juror admitted that he discussed the vest with the other jurors, when pressed for the specific details of that discussion, the juror said he only asked whether they thought Garrett was wearing a bulletproof vest and that the *only* response he received was "I don't know." Therefore, in the absence of any evidence that the remaining jurors actually saw the shock belt, Garrett cannot show that he was prejudiced and entitled to a mistrial. See *Scieszka v. State*, 259 Ga. App. 486, 487 (1) (578 SE2d 149) (2003) (defendant could not show prejudice from wearing a stun belt at trial where there was no evidence in the record that the belt was visible to the jury). Consequently, the trial court did not abuse its discretion by denying Garrett's motion for mistrial.

Accordingly, for the foregoing reasons, we affirm Garrett's convictions, sentence, and the denial of his motion for new trial.

*Judgment affirmed. Rickman, P. J., and Gobeil, J., concur.*