**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 7, 2014**

# In the Court of Appeals of Georgia

A14A0135. WELDON v. THE STATE.                    DO-005 C

DOYLE, Presiding Judge.

Following a jury trial, Brian Eugene Weldon was convicted of twelve counts of armed robbery,[1] aggravated assault,[2] and giving a false name to a law enforcement officer.[3] He appeals the denial of his subsequent motion for new trial, arguing that he was deprived of his Sixth Amendment right to a fair trial by the trial court's requirement that he wear an electronic security device under his clothing during the

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-5-21 (a) (2).

[3] OCGA § 16-10-25. Weldon was found not guilty of kidnapping, and the trial court directed a verdict as to two additional counts of armed robbery.

trial. Weldon also challenges the sufficiency of the evidence. We affirm, for the reasons that follow.

Viewed in favor of the verdict,[4] the record shows that on March 5, 2007, Weldon and two other men rushed into the China Star restaurant in Lawrenceville where Jian Guo, Long Zhang, and Zhi Chen were working. Weldon and at least one of the other men pointed guns at the employees and demanded money, and Weldon struck Guo in the back of the head with a handgun. The men fled after taking money from the employees. Guo identified Weldon at trial, and Zhang identified Weldon in a photographic lineup.

On March 16, 2007, Yun Zheng, Ri Zheng, , Mendy Zheng, and Nancy Zheng were working at the Hong Kong restaurant on Centerville Highway in Gwinnett County when two men armed with guns ran into the restaurant, pointed a gun at the employees, forced them to the ground, took money from the register and the employees, and ran. Mendy Zheng identified Weldon in a photographic lineup and at trial as one of the assailants.

Also on March 16, 2007, Di Liu, Coco Chen, and Liang Zhang were working at the New China Wok restaurant on Centerville Highway when two men with guns

---

[4] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

2

entered the restaurant, pointed guns at Zhang and Liu, forced them to the floor, and took money from the two employees and the register. One of the men struck Liu with a gun. Zhang identified Weldon at trial as one of the assailants.

On March 22, 2007, two men entered the Hunan Garden restaurant on Stone Mountain Highway where Mei Hung was working. One of the men pointed a gun at her, demanded that she give him the money from the cash register, took the money, and fled. Hung identified Weldon at trial as the man that wielded the gun, a customer present during the robbery identified him in a photographic lineup, and another customer identified him at trial.[5]

On March 26, 2007, Sung Park was working at the Georgia Cellular store on Annistown Road when Weldon and another man entered the store. One of the men pointed a gun at Park's head, one demanded his wallet,[6] and the two men took cash and phones from the store. Police recovered a videotape of the robbery taken from a store security camera, which was shown to the jury during the later trial.

---

[5] The customer who identified Weldon at trial testified that he looked "[v]ery familiar," but she was not certain about her identification.

[6] Park could not recall if the man who demanded his wallet was the same man who pointed a gun at his head.

3

Police subsequently obtained a warrant for Weldon in connection with the armed robberies and served it on him on March 29, 2007. When asked for his name, Weldon initially gave his brother's name. When police showed Weldon the videotape of the robbery at the Georgia Cellular store, he admitted to the officer that he was depicted on the tape, but claimed that the other man shown in the video forced him to participate by locking the front door and fleeing to an awaiting vehicle.

At trial, the State introduced similar transaction evidence, including (1) a March 19, 2007 armed robbery of a China King restaurant in DeKalb County by Weldon and another man during which an employee was shot; (2) a March 17, 2007 armed robbery of a Wings Express in DeKalb County by three men during which one of the employees was struck in the head with a gun; and (3) a March 19, 2007 armed robbery of a Fried Rice King restaurant in DeKalb County by two men, one of whom struck an employee in the head with a gun. The State introduced the testimony of Vandre Stewart, who was also charged with armed robbery in connection with the Hunan Garden robbery. Stewart, who pleaded guilty to robbery, testified that he robbed the Hunan Garden with Weldon.

At the conclusion of the evidence, the trial court directed a verdict as to two counts of armed robbery for which the State failed to present evidence. The jury

4

found Weldon not guilty of the sole count of kidnapping, and it found him guilty of the remaining counts. This appeal follows the denial of Weldon's subsequent motion for new trial.

1. Weldon argues that he was deprived of his Sixth Amendment right to a fair trial by the trial court's requirement that he wear an electronic security device under his clothing during the trial. We disagree.

On the first day of trial, defense counsel advised the court that Weldon did not "feel comfortable going to trial" and "[did not] feel that [the defense] was prepared to go to trial." In response, the trial court stated that the trial would proceed, noting that it had been on a calendar for years and that defense counsel had been provided with discovery as well as the transcript of the trial of the case involving the DeKalb County charges. The trial court then addressed Weldon:

> Now, further, not only at previous hearings but also today, I see you looking around a lot. You don't seem to be looking up here or [at] anybody else very much, but you seem to be looking around a lot. You're looking to the door when people come in. You seem to be more concerned with what's going on around you than what – with what's going on with your case. I've noted that before today. I've noted that today as well. Based on the nature of the charges and the risk you're facing of a life sentence for any one of the [twelve] armed robberies, with a similar transactions pending, a [forty]-year sentence out of

5

DeKalb, and a [twenty]-year rejected offer, the [c]ourt finds that it is necessary in order to conduct a safe and orderly trial in this matter without you making a go for the door, which it appears to me that you may be considering based on your looking to the door more than you look up here, that I am going to have you with an electronic belt on. . . . [The deputies are] going to go over that with you here, shortly. But that will allow us to need [fewer] deputies in the courtroom. You're facing significant risks[,] and your attention seemed to be elsewhere during all of the proceedings before today. . . . [This was not at the State's] request, but it's based on my observation of you coupled with the nature of the charges and coupled with the other issues in the case. I think it's necessary to do that to [ensure] that we have a safe and orderly trial without this being a field trip for you, to try to get out the back door. . . . The belt will not be visible to the jurors. The jurors will not see a belt on you; that would be prejudicial. . . . If you make any runs for the door, the jurors will very quickly be aware that you have a shock belt on, so you will be advised as to the type of things that would cause that to be activated.

The trial court explained to Weldon that he would be allowed to move around the courtroom to view the evidence without activating the device. After a recess, Weldon refused to come into the courtroom because he did not want to wear the shock device, and he was not ready to go to trial.

6

The trial court then questioned one of the courtroom deputies, who confirmed that he and another deputy both had to instruct Weldon to look forward in the courtroom because "[h]e was looking over his right shoulder, towards the direction of the gallery and the exit door." After Weldon reiterated his refusal to participate in the trial while wearing the device, the trial court instructed him that the trial would proceed in his absence. After a recess, Weldon finally agreed to wear the device in the courtroom, and the trial court again assured him that he would be able to move around the courtroom to view the evidence without the risk of being shocked.

Weldon moved for a new trial based in part upon the court's requirement that he wear the device during trial. At the hearing, the courtroom deputy testified that prior to placing the BAND-IT brand shock sleeve on Weldon, the deputy read him a notification form, which provides in relevant part:

> This system contains 50,000 volts of electricity. By means of a remote transmitter, an attending officer has the ability to activate the stun package attached to you, thereby possibly causing the following results to take place: 1. Immobilization causing you to fall to the ground[;] 2. Possibility of self-defecation[; and] 3. Possibility of self-urination."

The deputy explained that the BAND-IT device

is a black neoprene sleeve[,] and it's designed to slide over a person's leg. It has Velcro strap enclosings and zipper-reinforced enclosings to prevent tampering or removal. . . . [Clothing can be worn over the device] to conceal [it]. There is a remote device that only a certified deputy on the BAND-IT system will carry and will activate. . . .

The deputy further explained that if the button on the transmitter was pressed, the device would emit a "one-second high-pitched beep that is audible to most" before the shock, which could be prevented by releasing the button if the wearer complied with the deputy's commands. Weldon testified at the motion for new trial hearing that he was not able to focus on jury selection or during witnesses' testimony because he was worried about activating the shock device.

In Georgia, a trial court has power "[t]o preserve and enforce order in its immediate presence and, as near thereto as is necessary, to prevent interruption, disturbance, or hindrance to its proceedings.[7] "'It is well established that the use of extraordinary security measures to prevent dangerous or disruptive behavior which threatens the conduct of a fair and safe trial is within the discretion of the trial

_____

[7] OCGA § 15-1-3 (1).

8

court.'"[8] Our Supreme Court has held that a trial court has discretion to require a defendant to use a remote electronic security device worn under clothing and not visible to jurors if the use of the device is warranted and the defendant fails to show that he was harmed by its use.[9] "To demonstrate error, the defendant must show that the security measure utilized was so inherently prejudicial as to pose an unacceptable threat to his right to a fair trial."[10]

Here, the trial court explained that based upon the nature of the charges against Weldon (which included multiple incidents of pointing a gun at a victim or striking him or her with the gun) and its observations about his behavior in the courtroom, it required Weldon to use the device, which would not be visible to the jury. The deputy explained the device to Weldon, and the trial court repeatedly assured Weldon that he would be permitted to move around the courtroom to view the evidence without the risk of shock. Under these circumstances, we find no abuse of discretion in the

---

[8] *Nance v. State*, 280 Ga. 125, 126-127 (3) (623 SE2d 470) (2005), quoting *Young v. State*, 269 Ga. 478, 478-479 (2) (499 SE2d 60) (1998), overruled on other grounds by *Whitehead v. State*, 287 Ga. 242, 249 (2) (695 SE2d 255) (2010).

[9] See *Nance*, 280 Ga. at 127 (3); *Young*, 269 Ga. at 479 (2); *Brown v. State*, 268 Ga. 354, 359 (7) (490 SE2d 75) (1997).

[10] (Punctuation omitted.) *Brashier v. State*, 299 Ga. App. 107, 108 (1) (681 SE2d 750) (2009), quoting *Young*, 269 Ga. at 479 (2).

trial court's requirement that Weldon wear the security device.[11] Furthermore, Weldon has failed to establish "that the security measure utilized during his trial was so inherently prejudicial as to pose an unacceptable threat to his right to a fair trial."[12] Although Weldon testified that he was unable to focus at trial, he failed to specifically indicate how his apprehension about the device impeded his ability to participate in his defense, thereby failing to demonstrate harm.[13] Thus, we find no basis for reversal.

2. Weldon also challenges the sufficiency of the evidence. When reviewing the sufficiency of the evidence on appeal,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence,

---

[11] See *Nance*, 280 Ga. at 126-127 (3); *Young*, 269 Ga. at 479 (2); *Brashier*, 299 Ga. App. at 108 (1). Compare *United States v. Durham*, 287 F3d 1297, 1308-1309 (D) (11th Cir. 2002) (reversing conviction of defendant required to wear a stun belt at trial because the belt "hamper[ed the defendant's] ability to participate meaningfully in his defense," and the trial court's decision to require the belt was not supported by the record, as there was no evidence regarding the belt, the trial court made no factual findings regarding accidental activation of the belt, and the court failed to consider less restrictive alternatives).

[12] (Punctuation omitted.) *Young*, 269 Ga. at 479 (2).

[13] See id.; *Lovelace v. State*, 262 Ga. App. 690, 697 (7) (586 SE2d 386) (2003).

10

and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[14]

So viewed, the evidence presented at trial and summarized above was sufficient to authorize the jury to find Weldon guilty beyond a reasonable doubt of the crimes for which it returned guilty verdicts. Weldon's arguments that his convictions should be reversed because not every victim testified or was able to identify him at trial or in a photographic lineup are without merit. "The testimony of a single witness is generally sufficient to establish a fact."[15] "Furthermore, . . . the testimony of a victim is not required to sustain a conviction where there is other evidence that the defendant committed the acts which establish the elements of the offense."[16] Here, Weldon was identified as one of the assailants in each of the restaurant robberies by a witness

---

[14] (Citations omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[15] Former OCGA § 24-4-8. (Because this case was tried in 2010, we apply the former version of the Georgia evidence Code. See Ga. L. 2011, p. 99, § 101 ("[The revised evidence Code] shall become effective on January 1, 2013, and shall apply to any . . . trial commenced on or after such date.")).

[16] *Wickerson v. State*, 321 Ga. App. 844, 850 (1) (743 SE2d 509) (2013).

11

either in a lineup or at trial. And the jury viewed the videotape of the robbery of the cellular phone store, and Weldon admitted that he was depicted on the tape.[17] Given this evidence, as well as the testimony of Weldon's co-defendant, the trial court did not err by denying Weldon's motion for a new trial based his claim that the evidence was insufficient.[18]

 *Judgment affirmed. Miller and Dillard, JJ., concur.*

---

[17] The jury was entitled to reject Weldon's version of his involvement in the robbery of the phone store. See *Rudison v. State*, 322 Ga. App. 248, 250 (1) (744 SE2d 444) (2013).

[18] See *Jackson*, 443 U. S. at 219 (III) (B); *Shelley v. State*, 255 Ga. App. 360, 361 (1) (565 SE2d 567) (2002).