297 Ga. 537
FINAL COPY

S14G1721.  WELDON v. THE STATE.

HINES, Presiding Justice.

This Court granted a writ of certiorari to the Court of Appeals in *Weldon v. State*, 327 Ga. App. 862 (761 SE2d 421) (2014), to determine if that Court properly addressed Brian Eugene Weldon's claim that the trial court violated his Sixth Amendment right to a fair trial by ordering that he appear at trial wearing an electronic shock device as a security measure.  Finding that the Court of Appeals did not err, we affirm that Court's judgment.

Weldon was tried before a jury and convicted of twelve counts of armed robbery and other crimes.  Shortly after Weldon's case was called for trial, his counsel informed the court that Weldon "indicated this morning that he doesn't feel comfortable going forward to trial," and that this mindset was related to "defenses that he would have, given the facts of this case."  The court reviewed the history of the case, and indicated the trial would go forward.  Then, as noted in the opinion of the Court of Appeals,

[t]he trial court . . . addressed Weldon:

Now, further, not only at previous hearings but also today, I see you looking around a lot. You don't seem to be looking up here or [at] anybody else very much, but you seem to be looking around a lot. You're looking to the door when people come in. You seem to be more concerned with what's going on around you than what—with what's going on with your case. I've noted that before today. I've noted that today as well. Based on the nature of the charges and the risk you're facing of a life sentence for any one of the [twelve] armed robberies, with a similar transactions pending, a [forty]-year sentence out of DeKalb,[1] and a [twenty]-year rejected offer, the [c]ourt finds that it is necessary in order to conduct a safe and orderly trial in this matter without you making a go for the door, which it appears to me that you may be considering based on your looking to the door more than you look up here, that I am going to have you with an electronic belt on. . . . [The deputies are] going to go over that with you here, shortly. But that will allow us to need [fewer] deputies in the courtroom. You're facing significant risks[,] and your attention seemed to be elsewhere during all of the proceedings before today. . . . [This was not at the State's] request, but it's based on my observation of you coupled with the nature of the charges and coupled with the other issues in the case. I think it's necessary to do that to [ensure] that we have a safe and orderly trial without this being a field trip for you, to try to get out the back door. . . . The belt will not be visible to the jurors. The jurors will not see a belt on you; that would be prejudicial. . . . If you make any runs for the door, the jurors will very quickly be aware that you have a shock belt on, so you will be

---

[1] See *Weldon v. State*, 328 Ga. App. 163 (761 SE2d 566) (2014).

>  advised as to the type of things that would cause that to be activated.

Id. at 865. The electronic shock sleeve to which the court referred was a "BAND-IT brand shock sleeve" that could be fitted around one of Weldon's limbs; if activated by the deputy certified in its use, it would transmit a shock of 50,000 volts to Weldon, immobilizing him and possibly causing him to urinate or defecate. Id. at 866.

The court discussed with counsel the evidence that would be presented, recognized that Weldon would need to move about the courtroom, and stated:

> Mr. Weldon, when it's time for you to go over to the front pew over near the door to review evidence, I'll make sure that I authorize any movement within the courtroom. That's going to be necessary on several occasions. So we're going to make every effort to make sure that we have advance notice from the State that it's about to happen so the deputies can make a move over there, and then Mr. Weldon can make a move with his attorney to the front pew to observe any evidence. Because of the way the courtroom's set up, that's going to require him to move in order to view all of the evidence that he's entitled to see during the course of this trial.

Weldon was then sent out of the courtroom to dress in appropriate attire and for the shock sleeve to be placed upon him. However, Weldon refused to dress for trial or allow the shock sleeve to be fitted. After his counsel had

3

conferred with him, counsel stated:

> He reiterated the previous issue, that he said that he didn't feel that he was ready to go to trial. He indicated that — and this is with his permission — I told him that I was going to communicate this to the court, that he does not want to come out for trial with the shock sleeve on. And I indicated to him what the options are, that the court has avail[able] to him: to go forward without him in the courtroom; to do some other options, if the court deems that that's a possibility. He said he didn't care. He also wanted me to communicate to the court that it would be his desire to have the case continued for another two weeks.

Counsel also stated that "he's refusing to come into the courtroom based on the conditions that have been set by the court's order which is to have the sleeve on and all that." The court clarified: "I thought I heard you say also that he was refusing to come into the courtroom because he did not want to go forward with the trial. . . . He wanted to continue it." Counsel agreed with the court that it was not merely the court's decision to place a shock sleeve on Weldon that was causing him to refuse to dress and appear for trial; counsel also stated that he "vigorously object[ed]" to the trial court's requiring a shock sleeve.

Weldon was then brought before the court, in shackles, and the court addressed him regarding this choice; the court said that it had "to make additional arrangements for security in this case based on your lack of

4

cooperation with the Sheriff's Department and your attitude. Since I decided to do that, it is clear that my concerns — at this point, you've basically validated them, sir." The court also inquired of Weldon what alternative to a shock sleeve he might suggest, and he responded that it was "just common sense that I wouldn't want to do nothing [sic] like [attempt to flee through the door]." The court also questioned a deputy regarding attempts to place the shock device on Weldon, and the behavior that precipitated the court's decision; the deputy confirmed that deputies had to instruct Weldon to look forward in the courtroom rather than toward the gallery and exit door.

Weldon reiterated that he would not participate in the trial while wearing the shock sleeve, and the trial court informed him that the trial would then proceed in his absence. After a further recess, Weldon agreed to wear the shock sleeve during the trial. A deputy informed Weldon about the operation of the shock sleeve and presented him with an information form that prominently stated: "This apparatus will NOT be activated for simply consulting with legal counsel." Weldon refused to sign the form, although his counsel signed it. When Weldon appeared before the court appropriately dressed and wearing the shock sleeve, the trial court again assured him that he would be able to move

5

around the courtroom to view the evidence without the risk of being shocked.

The trial then proceeded to jury selection; the shock sleeve was around Weldon's arm and it is uncontroverted that at no time during the trial was the fact that he was wearing the device apparent to the jury. And, at no time during the proceedings did Weldon assert that the presence of the shock sleeve on his arm had an adverse effect on his ability to confer with counsel or his ability to focus on the trial. [2]

As this Court has stated:

> Although it is well settled that a defendant is entitled to a trial free of partiality which the presence of excessive security measures may create, it is also as well established that the use of extraordinary security measures to prevent dangerous or disruptive behavior which threatens the conduct of a fair and safe trial is within the discretion of the trial court. [Cit.] We have previously held that utilization of a remedial electronic security measure shielded from the jury's view is permissible where the defendant fails to show that he was harmed by its use. [Cit.]

*Young v. State*, 269 Ga. 478, 479 (2) (499 SE2d 60) (1998) (overruled on other

---

[2] After the jury was selected, through counsel, Weldon asked the court to reconsider its ruling that he be required to wear the shock sleeve, stating that "it is excessively binding and in some ways painful"; Weldon referred to "the distracting nature of the pain," but raised no argument that the asserted distraction affected his ability to consult with counsel or focus on the trial. The court directed deputies to see if the device could be made more comfortable during the break prior to opening statements, and observed that with the device on, Weldon appeared to focus more on the proceedings than he had done without it.

grounds, *Whitehead v. State*, 287 Ga. 242, 249 (2) (695 SE2d 255) (2010)). As noted, there is no evidence that the shock sleeve was apparent to the jury, and Weldon fails to show that he suffered any harm arising from adverse jury partiality created by the shock sleeve, or that the court abused its discretion in finding a necessity for it to be worn. See *Nance v. State*, 280 Ga. 125, 127 (3) (623 SE2d 470) (2005).

Nonetheless, during the hearing on the motion for new trial, Weldon contended that during the trial he feared being shocked by accident, and that this fear interfered with his ability to focus on the trial. However, as noted above, at no time during the course of the trial did Weldon claim that the shock sleeve was causing him any such inability. Of course, "a party can not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later." *King v. State*, 286 Ga. 721, 722 (690 SE2d 852) (2010) (Citations and punctuation omitted.) Failure to raise the issue deprives the trial court of the opportunity to take appropriate remedial action and waives appellate review of any alleged impropriety.[3] *White v. State*, 281 Ga. 276, 280-281 (5)

---

[3] We note that Weldon's trial occurred in 2010, and thus, does not fall under the new Evidence Code, effective January 1, 2013. See *Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012), noting that plain error review is limited under the pre-2013 Code.

7

(637 SE2d 645) (2006).  Accordingly, the Court of Appeals did not err in affirming the trial court on this ground.

Judgment affirmed.  All the Justices concur.

NAHMIAS, Justice, concurring.

I join the Court's opinion in full.  Before a trial court requires a criminal defendant to wear an electronic shock device as a security measure in the courtroom, the court must: (1) explain why such an extraordinary security measure is needed to protect the safety and decorum of the proceeding and those participating in it; (2) consider alternative ways to address that need; (3) ensure that the defendant is aware of the operation of the device and, in particular, what conduct by him may lead to a shock; and (4) provide an opportunity for the defendant to address these matters and present any other concerns about use of the shock device.  See Nance v. State, 280 Ga. 125, 126-127 (623 SE2d 470) (2005).

Although more detailed discussion may have been preferable, the record in this case shows that the trial court sufficiently addressed these matters and articulated reasons supporting its ultimate exercise of discretion to require Weldon to wear a concealed shock device during his trial.[1] The record also shows that before and during the trial, Weldon did not identify any alleged shortcomings in the court's findings or ask the court to consider any claim that the device was impairing his ability to confer with counsel or to focus on the proceeding, and he thereby forfeited his right to raise such objections on appeal. This case is therefore distinguishable from the federal case on which Weldon principally relies, United States v. Durham, 287 F3d 1297 (11th Cir. 2002), where the defendant filed a pretrial motion to prohibit use of a shock belt, asserting that the device would interfere with his rights to confer with counsel and to participate in his own defense, and requested an evidentiary hearing to address "a number of other questions relating to the operation and physical effects of the stun belt," including "information about the error rate of the device, the criteria for triggering the belt, medical evidence that the shock would

---

[1]To the extent that the Court of Appeals has read our cases as not requiring a trial court to make *any* findings on the record regarding use of a shock device, see Lovelace v. State, 262 Ga. App. 690, 697 (586 SE2d 386) (2003), I believe that reading is erroneous.

cause no long-term physical damage to the recipient, and information on the training of the deputy with responsibility for activating the belt," which the Eleventh Circuit held that the trial court did not then sufficiently address on the record. Id. at 1301-1302, 1307-1308.

Having reviewed the case law and the parties' arguments on this topic, however, I believe three additional points are worthy of mention. First, although one of this Court's cases might be read to suggest that the trial court can simply "defer[ ] to the sheriff in such security matters," Brown v. State, 268 Ga. 354, 359 (490 SE2d 75) (1997), I think it is clear that the court must ultimately determine for itself the need for extraordinary security measures and what measures to employ. In other words, the court may properly take into account, but may not defer entirely to, the views of the law enforcement personnel who are responsible for securing the courtroom but are not responsible for securing the defendant's constitutional rights. The trial court in this case acted properly in this regard.

Second, in considering alternative measures, the court and the parties should recognize that certain security measures may have different potential effects on different rights of the defendant. Thus, for example, the use of a

2

concealed shock device poses less risk that the jury will prejudicially perceive the defendant as dangerous, when compared to the use of more visible security measures like guards or shackles — but the shock device may pose a greater risk to the defendant's ability to consult with counsel and to focus on the proceeding. Thus, whether a particular security measure should be deemed a "less restrictive alternative" than another measure depends on what rights the defendant asserts as well as the particular circumstances of the case.

Finally, and relatedly, the test this Court once applied to a claim regarding use of shock device — whether it was "'"'so inherently prejudicial as to pose an unacceptable threat to [the defendant's] right to a fair trial,'"'" Young v. State, 269 Ga. 478, 479 (499 SE2d 60) (1998) (citation omitted), overruled on other grounds by Whitehead v. State, 287 Ga. 242, 249 (695 SE2d 255) (2010) — is properly applied only to determine whether *conspicuous* security measures, like an allegedly excessive number of guards, affected the defendant's Sixth Amendment right to a fair trial, as in the case from which Young quoted, Chancey v. State, 256 Ga. 415, 434-435 (349 SE2d 717) (1986). Use of a properly concealed shock device will never meet that test — but the analysis should not end there if the defendant claims that the shock device also violated

3

his Sixth Amendment right to counsel or his due-process-based right to be present at trial.  See Brown, 268 Ga. at 359-360 (stating that "accepting the analogy to shackling, [a shock device]  is prejudicial to a defendant only when visible to the jury," citing cases akin to Chancey, but then going on to address and reject the defendant's "contention that the device nonetheless had a detrimental psychological effect on his ability to participate in the trial").  In this regard, the Court of Appeals appears to have incorrectly read Young and Brown to hold that "[u]se of a restrictive security device is *only* prejudicial when visible to the jury," Brashier v. State, 299 Ga. App. 107, 108 (681 SE2d 750) (2009) (emphasis added), although the defendant in Brashier may not have alleged any impairment of his ability to confer with counsel or attend to the trial, so the result in that case may still be correct.

With these additional observations, I join the Court's opinion.

4

Decided July 13, 2015.

Certiorari to the Court of Appeals of Georgia – 327 Ga. App. 862.

G. Richard Stepp, for appellant.

Daniel J. Porter, District Attorney, Christopher M. Quinn, Thomas L. Williams, Assistant District Attorneys, for appellee.