**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. http://www.gaappeals.us/rules

**September 16, 2015**

# In the Court of Appeals of Georgia

A15A1343. CAMPBELL v. THE STATE.

BARNES, Presiding Judge.

A jury found Henry Leroy Campbell III guilty of riot in a penal institution, mutiny, and five counts of obstruction of a law enforcement officer. Following the denial of his motion for new trial, Campbell appeals, contending that the trial court abused its discretion and denied him a fair trial by requiring him to wear an electronic security device during the trial. Upon our review, we affirm.

On appeal, we review the evidence in the light most favorable to the jury's verdict, and Campbell no longer enjoys a presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Id.

So viewed, the evidence shows that a deputy sheriff working at the county jail was dispensing medication in Cell Block A when Campbell, an inmate, approached him. Campbell asked the deputy for his name and badge number and said the jailers were holding him against his will. The deputy asked him some questions to see if he could help him, but Campbell kept saying the same thing over and over. The deputy eventually said he would check on things for Campbell and tried to shut the cell block door, but Campbell stuck his foot in the door and said he was not done talking.

The deputy eventually secured the door and began to move on, but realized that Campbell was still agitated and was concerned that new employees at the jail might encounter difficulty handling Campbell if he tried to exit the cell block. The deputy thus returned to Campbell's cell block, intending to "defuse and secure him somewhere else and give him time to cool off a little bit." Campbell, who was sitting at a table holding a pencil, refused the deputy's instructions to step outside the cell block, where the deputy had intended to handcuff him, so the deputy entered the block instead. Because Campbell was getting louder and more belligerent, the deputy tried to place the handcuffs on him so he would not hurt anyone.

Still holding the pencil, Campbell balled up his fists when the deputy tried to cuff him. The deputy drew his Taser and commanded Campbell to stand next to the

2

wall. Campbell threw down the pencil and made his way to the wall, but turned toward the deputy with his fists balled. Anticipating that Campbell was going to charge him, the deputy fired his Taser and the leads struck Campbell on his chest but did not make him fall, so the deputy moved closer, intending to use the Taser on him directly to force him to the ground. Before he could do so, Campbell charged him, pinned his arms in a bear hug, shoved him into a table, and threw him back over Campbell's shoulder.

As the deputy crawled toward the door, Campbell struck him on the back of his head with his fists, then with the deputy's radio and knocked him back to the ground. The deputy described it as feeling like he "was hit in the head with a brick." He tried to get to his feet, fearing that Campbell was about to kill him, but Campbell kept hitting him on the head with the radio and knocking him to the ground. The officer finally "got enough push to lunge for the door" and escaped from the cell block. His clothes were completely covered in blood from a head wound that required stitches.

The other inmates in the block returned to their individual cells, but Campbell remained in the common area with the officer's Taser in his hands and a blanket over his shoulders. The sergeant called over the intercom system and told Campbell to empty his hands, but Campbell just fired the Taser into the air. He got into a fighting

3

stance when several officers entered the cell block. The sergeant deployed his Taser, but Campbell was wearing a blanket that shielded him from the weapon's effect. He dropped the blanket and began advancing toward the officers when a deputy struck him with the leads of his Taser. When Campbell fought off the effects of the Taser and began to stand, three officers struck him with their hands until they finally subdued and cuffed him. Campbell was charged with four counts of obstruction of a law enforcement officer, aggravated assault on a peace officer, mutiny, and riot in a penal institution. As to the aggravated assault charge, the jury found him guilty of the lesser included offense of felony obstruction, and also found him guilty of the other charges.

1. Although Campbell has not challenged the sufficiency of the evidence, the evidence as outlined above was sufficient to allow a rational trier of fact to find him guilty beyond a reasonable doubt of mutiny in a penal institution, riot in a penal institution, and five counts of obstruction of a law enforcement officer. *Chynoweth v. State*, 331 Ga. App. 123, 125 (1) (768 SE2d 536) (2015) (evidence that defendant swung his fist at officer was sufficient to affirm conviction for obstruction and riot in a penal institution for committing an act in a violent manner); *Bierria v. State*, 232 Ga. App. 622, 625 (9) (502 SE2d 542) (1998) (evidence that defendant was in lawful

4

custody when he assailed, opposed or resisted an officer of the law with the intent to cause serious bodily injury was sufficient to affirm conviction for mutiny in a penal institution).

2. Campbell asserts that the trial court abused its discretion and denied him a fair trial by ordering that he appear at trial wearing an electronic shock device as a security measure when "nothing about Mr. Campbell or the circumstances of this case required the wearing of the shock device." Campbell also alleges that his apprehension about the device impeded his ability to participate in his defense, thereby resulting in a denial of his right to a fair trial. He contends that he should be granted a new trial "following a hearing dedicated to his in-court behavior and the proper considerations governing the determination that a defendant must wear a non-visible electronic shock or stun device during a criminal trial," citing *Weldon v. State*, 327 Ga. App. 862 (761 SE2d 421) (2014), affirmed, *Weldon v. State*, ___ Ga. ___ (Case No. S14G1721, Decided July 13, 2015).

Before striking the jury in this case, the State moved to have the trial court require Campbell to wear an electronic restraint belt during the trial and called three witnesses, one to testify about how the device worked and two to testify about other incidents of violence that arose with Campbell while he was incarcerated. The deputy

5

responsible for courtroom security testified that the electronic restraint belt is a remote-controlled device that is placed around the subject's waist, hidden from view, with the capacity to emit 50,000 volts of electricity for eight seconds. The device would be monitored by himself or his supervisor, both of whom were trained to use it, and would be activated only if there was "a physical manifestation by the individual in an aggressive manner." If Campbell was "merely verbally disruptive" or simply stood up, the operator would cause the belt to give a warning tone rather than emit a shock.

A sheriff's office booking supervisor testified that Campbell had flooded his jail cell while he was awaiting trial on these charges, and when the supervisor moved him to a new cell, Campbell refused to kneel down for his handcuffs to be released. The supervisor then tried to place Campbell in a restraint chair, but Campbell refused to do so, and in the struggle he bit the supervisor's finger so deeply that fat and muscle were visible in the wound.

Another deputy testified that two days after the biting incident, he opened Campbell's cell so Campbell could clean it, and Campbell became "involved in a verbal altercation with another inmate." The deputy asked Campbell to return to his cell multiple times before Campbell finally complied. When the deputy closed

6

Campbell's cell door, Campbell began cursing at him and threatened to kill him if he ever caught him out on the street.

After hearing this testimony, the trial court determined that, based on the evidence presented, it was appropriate to require Campbell to wear the electronic restraint belt under his clothing and invisible to the jury. The restraining device was not activated at any time during Campbell's trial.

Under OCGA § 15-1-3 (1), a trial court has the power "[t]o preserve and enforce order in its immediate presence and, as near thereto as is necessary, to prevent interruption, disturbance, or hindrance to its proceedings." See also *Nance v. State*, 280 Ga. 125, 127 (623 SE2d 470) (2005). Campbell contends that the trial court abused its discretion in making him wear an electronic restraint belt because, unlike the defendants in other cases affirming the use of courtroom restraints, he was not on trial for murder and he had made no violent outbursts, threats to the prosecutor, or disruption in the courtroom.

> Although it is well settled that a defendant is entitled to a trial free of partiality which the presence of excessive security measures may create, it is also as well established that the use of extraordinary security measures to prevent dangerous or disruptive behavior which threatens the conduct of a fair and safe trial is within the discretion of the trial court. [The Georgia Supreme Court has] previously held that utilization

7

of a remedial electronic security measure shielded from the jury's view is permissible where the defendant fails to show that he was harmed by its use.

*Young v. State*, 269 Ga. 478 (2) (499 SE2d 60) (1998), overruled in part on other grounds, *Whitehead v. State*, 287 Ga. 242, 249 (2) (695 SE2d 255) (2010).

While the use of a properly concealed shock device will never be so inherently prejudicial as to pose an unacceptable threat to the defendant's right to a fair trial, "the analysis should not end there if the defendant claims that the shock device also violated his Sixth Amendment right to counsel or his due-process-based right to be present at trial." *Weldon v. State*, ___ Ga. at ___ (Nahmias, J., concurring specially). Campbell contends that "[a] criminal defendant should not be distracted and unable to focus on trial and assisting his attorney because he is afraid for his personal safety and avoiding physical injury." He also noted in his recitation of the evidence that during a break, the trial court asked him to lower his voice to a whisper when he was talking to his lawyer. Campbell responded, "Yes, sir. ... I don't want to get electrocuted." Other than this comment, Campbell has pointed to no assertions he made during the trial in which he asserted that wearing the restraint belt had an adverse effect on him because it prevented him from assisting his attorney.

Of course, a party can not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later. Failure to raise the issue deprives the trial court of the opportunity to take appropriate remedial action and waives appellate review of any alleged impropriety.

*Weldon v. State*, ___ Ga. at ___.

The trial court did not abuse its discretion by ordering Campbell to wear the restraint belt.

*Judgment affirmed. Ray and McMillian, JJ., concur.*