**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 15, 2017**

# In the Court of Appeals of Georgia

A17A1170. GARNER v. THE STATE.

McMILLIAN, Judge.

Ronta Garner appeals the denial of his motion for new trial, as amended, after a jury convicted him of aggravated assault and possession of a firearm during the commission of a crime. We affirm for the reasons set forth below.

Viewed in the light most favorable to the verdict,[1] the evidence at trial showed that on the evening of October 30, 2013, Garner and Shamarcus Grimes were at an apartment complex in Hall County when they encountered Quavis Carruth, Trevor Martin, and Darius Wilkins. Both Garner and Grimes drew their guns, with Garner pointing his gun at Martin and Grimes pointing his gun at Carruth. Carruth said that during this encounter, he crossed his arms and looked Grimes in the eye to hide the

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

fact that he was afraid. Garner and Grimes let the men leave after Garner, who appeared angry, spoke with Martin. Later, Garner and Grimes began following the other men through the apartment complex. At one point, Garner called Carruth over and asked him about the way he had been looking at Grimes. During this second conversation, Grimes told Garner, "If you don't shoot [Carruth], I'll shoot you." Garner then shot Carruth.

Based on this incident, Garner and Grimes were indicted jointly on a charge of aggravated assault, and Garner was indicted individually on one count of possession of a firearm during the commission of a crime. Garner later filed a motion to sever his trial from Grimes's, and the trial court granted the motion. The jury convicted Garner on both counts.[2]

1. Garner argues that the trial court denied his Sixth and Fourteenth Amendment rights by requiring him to wear a shock belt during the course of trial. Although the shock belt was attached to Garner's ankle underneath his pants and not visible to the jury, he asserts that the stress of wearing the belt inhibited his ability to assist in his own defense.

---

[2] The jury also acquitted Garner of attempted armed robbery, aggravated assault, false imprisonment (two counts), and cruelty to children in the third degree, arising out of an incident that occurred earlier on the evening of October 30, 2013.

Before the jury entered the courtroom, Garner's counsel objected to the use of the shock belt, noting that he had first learned of this security measure on the morning of trial and that he had been given no reason for its use. The attorney said he thought the device made his client "extremely nervous" and argued that it interfered with the administration of a fair jury trial. Although the trial judge stated that he did not usually interfere with the sheriff's chosen security measures, the judge nevertheless questioned the officer assigned to oversee security in his courtroom about the use of the device and its effect on Garner, and he allowed Garner's counsel to do the same. Based on this exchange, the trial judge overruled Garner's objection, stating that he did not find any evidence that the device would prevent Garner from being able to fully and actively participate in the trial.

> Although it is well settled that a defendant is entitled to a trial free of partiality which the presence of excessive security measures may create, it is also as well established that the use of extraordinary security measures to prevent dangerous or disruptive behavior which threatens the conduct of a fair and safe trial is within the discretion of the trial court.

*Young v. State*, 269 Ga. 478, 479 (2) (499 SE2d 60) (1998), overruled on other grounds by *Whitehead v. State*, 287 Ga. 242 (695 SE2d 255) (2010). See also *Weldon*

3

*v. State*, 297 Ga. 537, 540-41 (775 SE2d 522) (2015); *Nance v. State*, 280 Ga. 125, 127 (3) (623 SE2d 470) (2005); *Campbell v. State*, 333 Ga. App. 829, 831 (2) (777 SE2d 507) (2015). Moreover,

> [w]hile the use of a properly concealed shock device will never be so inherently prejudicial as to pose an unacceptable threat to the defendant's right to a fair trial, the analysis should not end there if the defendant claims that the shock device also violated his Sixth Amendment right to counsel or his due-process-based right to be present at trial.

(Citation and punctuation omitted.) *Campbell*, 333 Ga. App. at 832 (2). In that situation, the defendant must show that the use of the shock device prejudiced his due process rights or interfered with his right to counsel. *Weldon*, 297 Ga. at 541; *Campbell*, 333 Ga. App. at 833 (2).

Pretermitting whether the trial court erred in failing to articulate the reasons supporting the use of the shock belt, neither Garner nor his counsel raised any complaints during the course of the trial that the shock belt was interfering with Garner's ability to assist in his own defense, other than counsel's initial objection that he thought the shock belt made Garner nervous. "Failure to raise the issue [at trial] deprives the trial court of the opportunity to take appropriate remedial action and

4

waives appellate review of any alleged impropriety." (Citations and punctuation omitted.) *Weldon*, 297 Ga. at 541. We also note that Garner did not testify at the hearing on his motion for new trial, and there was no other evidence presented at that hearing as to how the shock belt affected him.[3] Accordingly, because the record is devoid of any evidence of harm or prejudice to Garner from the use of the shock belt, he cannot establish that he was deprived of a fair trial on this ground. Id. In addition, based on the facts and circumstances of this case, including evidence that Garner had threatened the victim and his children,[4] we find no abuse of discretion in the trial court's overruling of Garner's objection to the use of the shock device.

2. Garner similarly asserts that the trial court violated his Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process by allowing an extra metal detector to be placed outside the entrance to Garner's courtroom in view of the jury. As with the shock belt, the use of this security measure was within the

---

[3] The only witness at the motion hearing was a lieutenant from the sheriff's office who was in charge of courtroom security for Garner's trial. He testified the sheriff's office decided to use the shock belt and an extra metal detector after the State asked for increased security because the case involved a gang-related matter and threats had been made against witnesses and their family members.

[4] We note that the trial court had heard proffers of this evidence prior to trial, and thus prior to ruling on Garner's objection, during a hearing on a motion in limine.

trial court's discretion. *Young*, 269 Ga. at 479 (2). However, Garner asserts that the trial court failed to exercise discretion, and instead, he argues, the court merely deferred to the sheriff's office, which in turn deferred to the prosecution, in placing the extra metal detector outside of the courtroom.

On the first day of trial, before the jury panel entered the courtroom, Garner's attorney raised the issue of the additional metal detector placed outside the courtroom for Garner's trial and noted none of the other three courtrooms had such security. He objected to the presence of these devices in sight of the jury. The trial judge overruled the objection but offered to instruct the jurors prior to the jury selection process that his courtroom was the only one in operation that week, which would have suggested a neutral explanation for the absence of metal detectors outside the other courtrooms. Garner's attorney declined the offer.

Subsequently, the jury panel was escorted around the metal detector when they entered the courtroom for the first time. Once the jury was selected, however, they entered and left the courtroom through a separate, private entrance out of sight of the metal detector, and the doors to the courtroom were closed during trial, blocking the jurors' view of the device, unless someone entered or exited the courtroom.

6

As with the use of the shock belt, Garner has failed to demonstrate that the use of the extra metal detector resulted in any prejudice. Although Garner contends that the use of a visible metal detector outside the courtroom was inherently prejudicial to him, and thus he does not need to show actual harm, we disagree. The United States Supreme Court has held that additional security measures, other than visible personal restraints, are not inherently prejudicial due to "the wider range of inferences that a juror might reasonably draw" from their use. *Holbrook v. Flynn*, 475 U.S. 560, 569 (106 SCt 1340, 89 LE2d 525) (1986). That case involved the presence of additional police officers in the courtroom, and the Court explained,

> While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards.

*Holbrook*, 475 U.S. at 569.

Although we could find no case in Georgia specifically addressing the use of extra metal detectors, other jurisdictions have found that the reasoning in *Holbrook*

7

applies equally to such devices because, unlike personal restraints, they do not indicate that the defendant himself presents any particular danger. See, e. g., *Smith v. State*, 7 So3d 473, 493 (Fla. 2009) ("This type of security measure is a part of our daily experience and cannot be deemed prejudicial."); *People v. Jenkins*, 22 Cal4th 900, 996 (13) (997 P2d 1044) (2000) ("[T]he use of a metal detector outside a courtroom, like the use of additional security forces within the courtroom, is not a measure that is inherently prejudicial."); *Bruce v. State*, 318 Md. 706, 719 (I) (569 A2d 1254) (1990) ("Security measures outside the courtroom not in close proximity to the accused [including metal detectors outside courtroom door] are far less likely to have a prejudicial effect than security measures within the courtroom and/or surrounding the person on trial[.]"); *State v. Aguilar*, 352 NW2d 395, 396 (Minn.1984) (use of metal detectors and searches of people entering the courtroom not prejudicial, even where defense counsel not consulted regarding these measures, because the fact that everyone was searched minimized the risk that jurors would draw adverse inferences against the defendant). We find the reasoning in these cases persuasive and conclude that when asserting that a security measure outside the courtroom violates his constitutional right to a fair trial, the defendant must show prejudice or harm resulting from the security measure. See *Weldon*, 297 Ga. at 541.

8

Therefore, because Garner has failed to show that the use of the extra metal detector prejudiced his right to a fair trial, we find no basis for reversal on this ground. Likewise, we find no abuse of discretion by the trial court in overruling Garner's objection to the extra metal detector.

3. Garner also asserts that the trial court abused its discretion in allowing Carruth to give hearsay testimony when he stated that Grimes told Garner, "If you don't shoot him, I'll shoot you." Garner contends that a previously granted motion in limine and the statutory hearsay exclusions should have kept the jury from hearing this statement. We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Hafeez v. State*, 339 Ga. App. 467 (793 SE2d 632) (2016).

Garner filed a pretrial motion in limine to exclude any statements made by Grimes to investigators, and his counsel explained at the subsequent motion hearing that he filed the motion "in reference to [Grimes's] custodial interrogation." Although the trial court granted that motion, Carruth's alleged hearsay testimony did not address a custodial statement by Grimes but instead concerned a statement Grimes made during the course of the crime. Accordingly, Carruth's testimony was not subject to the trial court's ruling on the motion in limine.

9

At trial, Garner objected to this testimony on hearsay grounds. Under OCGA § 24-8-801 (c), "'[h]earsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, Grimes's statement was not offered for the truth of the matter asserted, as it was not offered to show that Grimes intended to shoot Garner if he did not shoot Carruth. Rather, the testimony was relevant to show the effect of Grimes's statement on Garner and his possible motive for shooting Carruth. See *Gates v. State*, 298 Ga. 324, 326 (2) (781 SE2d 772) (2016). Thus, it cannot be considered hearsay, and we find no abuse of discretion.

4. Garner next asserts that the trial court erred in failing to merge his sentences for aggravated assault and possession of a firearm during the commission of that crime. However, it is well settled that the crime of unlawful possession of a firearm during the commission of a crime "is a crime distinct from the predicate felony." *Scudder v. State*, 298 Ga. 438, 441 (6) (782 SE2d 638) (2016). See also, *Clark v. State*, 279 Ga. 243, 248 (8) (611 SE2d 38) (2005); OCGA § 16-11-106 (b). "The two crimes do not merge because, as we have noted in other cases, the legislature intended to impose additional punishment against a person who uses a firearm during the commission of certain crimes, including aggravated assault." *Turner v. State*, 289 Ga.

App. 103, 104 (1) (656 SE2d 235) (2008). Thus, the two convictions in this case were not subject to merger. *Scudder*, 298 Ga. at 441 (6); *Turner*, 289 Ga. App. at 104 (1).

*Judgment affirmed. Barnes, P. J., and Mercier, J., concur*.