**SECOND DIVISION**
**MARKLE, J.,**
**LAND and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 3, 2025**

# In the Court of Appeals of Georgia

A24A1351. SCALES v. THE STATE.

Davis, Judge.

Following a jury trial in Carroll County Superior Court, Bernard Scales was convicted of aggravated child molestation and child molestation. Scales now appeals from the trial court's denial of his motion for new trial, arguing that the use of a shock device to restrain him during trial was unconstitutional and that his trial counsel provided ineffective assistance by failing to object to the use of the device. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence at trial showed that Scales molested one of his girlfriend's twin 14-year-old daughters by engaging in

---

[1] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

vaginal intercourse with her, performing oral sex on her, and fondling her breasts, and that he molested the other twin daughter by fondling her breasts. Scales was charged by indictment with one count of aggravated child molestation (OCGA § 16-6-4 (c)) and three counts of child molestation (OCGA § 16-6-4 (a)). Following a trial in November 2018, the jury found Scales guilty of all four charges. The trial court sentenced Scales to a total of 25 years in confinement, to be followed by life on probation.

Scales filed a motion for new trial, claiming for the first time that his constitutional rights — specifically, his due process right to be present and meaningfully participate in his own defense, his right to testify, his right to equal protection, and his right against abuse of prisoners — were violated because he was required to wear an electronic shock device known as a "Band-It" during trial.[2] Scales also claimed that his trial counsel rendered ineffective assistance by failing to object to the use of the device.

At a hearing on the motion for new trial, Scales testified that he was distracted and unable to make proper decisions at trial due to his fear of the Band-It being

---

[2] Scales filed his initial motion for new trial in January 2019 but he did not raise any claim regarding the device until August 2022.

activated. However, trial counsel testified that he had been totally unaware of the device, he had no problems communicating with Scales, and Scales appeared to understand and be attentive during the trial proceedings.

In denying the motion for new trial, the trial court found that Scales failed to demonstrate any harm to his constitutional right to testify and participate in his own defense based on the use of the Band-It, and to the extent the court erred in failing to hold a hearing prior to placing the device on him, any such error was harmless beyond a reasonable doubt because ample grounds existed to authorize the use of the device. The court stated the following in support: Scales outweighed the biggest deputy on courthouse security by approximately 100 pounds, faced the possibility of a life sentence, attempted to escape the court's jurisdiction by absconding with the victims halfway across the country, and made no complaint about wearing the device until his amended motion for new trial. The device's ability to remain hidden beneath Scales' clothing — as opposed to visible leg shackles or a large security detail — and its lack of known misfire rates made it the best option to avoid eroding his presumption of innocence before the jury.

The trial court found that the use of the Band-It did not violate Scales' equal protection rights because incarcerated defendants are not a suspect class, and the use of the device was intended to meet the legitimate state interests of maintaining safety and order in the courtroom. The court found that Scales' right against abuse of prisoners was not violated because (1) the only potential harm he suffered was the fear of receiving an electric shock, but he was informed of when the device would be activated; (2) courthouse security testified that they typically warn defendants of problematic behavior before activating the device; and (3) Scales gave no indication that he was afraid of the device during trial.

Finally, the trial court rejected Scales' ineffective assistance claim, finding that trial counsel was not notified by Scales of any concerns regarding the device, did not perceive anything unusual about his demeanor during trial, and was able to freely converse with him during the trial itself and during breaks when he was not equipped with the device. Scales then filed this appeal, reiterating his constitutional claims and his ineffective assistance claim.

1. Under OCGA § 15-1-3 (1), a trial court has the power "[t]o preserve and enforce order in its immediate presence and, as near thereto as is necessary, to prevent

interruption, disturbance, or hindrance to its proceedings." "Use of security measures to prevent dangerous or disruptive behavior that threatens the conduct of a fair and safe trial is within the trial court's discretion." (Citation and punctuation omitted.) *Mohamed v. State*, 307 Ga. 89, 91 (2) (a) (834 SE2d 762) (2019).

Pretermitting whether Scales waived his constitutional claims regarding the Band-It by failing to raise any objection to the device at trial,[3] and pretermitting

---

[3] Georgia's appellate courts have generally held that the failure to raise at trial any issue regarding a security measure used upon a defendant deprives the trial court of the opportunity to take remedial action and waives appellate review of any alleged impropriety. See, e.g., *Mohamed v. State*, 307 Ga. 89, 91 (2) (a) (834 SE2d 762) (2019); *Weldon v. State*, 297 Ga. 537, 541 (775 SE2d 522) (2015); *Casas v. State*, 368 Ga. App. 434, 439 (2) (890 SE2d 308) (2023); *Campbell v. State*, 333 Ga. App. 829, 833 (2) (777 SE2d 507) (2015). However, none of these cases involved a situation where the defendant's trial counsel was apparently unaware of the security measure, and in *Young v. State*, 312 Ga. 71, 82-83 (16) (860 SE2d 746) (2021), the Supreme Court of Georgia indicated that there may not be a waiver of the issue for time periods when counsel is not so aware. Here, the evidence supports the trial court's finding that trial counsel was not aware of the Band-It. Because we ultimately conclude that Scales' constitutional rights were not violated by the use of the device, we need not decide whether he waived any objection to the device by failing to raise the issue with counsel or the trial court.

5

whether the trial court played any role in requiring him to wear the device,[4] we

conclude that his constitutional claims lack merit.[5]

---

[4] At the hearing on the motion for new trial, a lieutenant with the Carroll County Sheriff's Office in charge of courthouse security testified that (1) prior to 2012, the Carroll County Superior Court issued an order authorizing courthouse security to use the Band-It on every incarcerated defendant appearing for a felony trial; and (2) it was the practice and policy of courthouse security to use the device on every such defendant. The record does not contain a copy of any such order, and it is unclear what role, if any, the judge who presided over Scales' trial played in the use of the device here. We have serious concerns about the legality of any blanket rule calling for the use of a shock device on every incarcerated defendant appearing for a felony trial, especially if the device is placed upon the defendant without notifying his counsel or the trial court judge, thereby depriving the judge of an opportunity to hold a hearing or make any findings on the issue. See *Weldon v. State*, 297 Ga. 537, 541-542 (775 SE2d 522) (2015) (Nahmias, J., concurring) ("Before a trial court requires a criminal defendant to wear an electronic shock device as a security measure in the courtroom, the court must: (1) explain why such an extraordinary security measure is needed to protect the safety and decorum of the proceeding and those participating in it; (2) consider alternative ways to address that need; (3) ensure that the defendant is aware of the operation of the device and, in particular, what conduct by him may lead to a shock; and (4) provide an opportunity for the defendant to address these matters and present any other concerns about use of the shock device."); but see *Casas*, supra, 368 Ga. App. at 438 (2) ("[T]he decisions of our Supreme Court do not require a trial court to make these findings on the record regarding the use of a shock device, and we need not reverse on account of the trial court's failure to do so.") (citation and punctuation omitted). However, in the instant case our task is confined to determining whether Scales was prejudiced by the use of the Band-It.

[5] Although the Supreme Court of Georgia has jurisdiction over "[a]ll cases involving the construction of . . . the Constitution of the State of Georgia or of the United States," our Court has jurisdiction over "cases that involve the application, in a general sense, of unquestioned and unambiguous provisions of the Constitution

(a) We conclude that the use of the Band-It on Scales did not violate his right to be present and meaningfully participate in his own defense, including his right to testify.

> Although it is well settled that a defendant is entitled to a trial free of partiality which the presence of excessive security measures may create, it is also as well established that the use of extraordinary security measures to prevent dangerous or disruptive behavior which threatens the conduct of a fair and safe trial is within the discretion of the trial court. . . . [U]tilization of a remedial electronic security measure shielded from the jury's view is permissible where the defendant fails to show that he was harmed by its use.

(Citation and punctuation omitted.) *Weldon v. State*, 297 Ga. 537, 540-541 (775 SE2d 522) (2015); see also *Campbell v. State*, 333 Ga. App. 829, 832 (2) (777 SE2d 507) (2015) ("While the use of a properly concealed shock device will never be so inherently prejudicial as to pose an unacceptable threat to the defendant's right to a fair trial, the analysis should not end there if the defendant claims that the shock

to a given state of facts and that do not involve construction of some constitutional provision directly in question and doubtful either under its own terms or under the decisions of the Supreme Court of Georgia or the Supreme Court of the United States." (Citations and punctuation omitted.) *State v. Davis*, 303 Ga. 684, 687-688 (1) (814 SE2d 701) (2018). We have jurisdiction over the instant case because it falls into the latter category.

device also violated his Sixth Amendment right to counsel or his due-process-based right to be present at trial.") (citation and punctuation omitted).

Significantly, Scales did not advise the trial court or trial counsel that the Band-It had any impact on his ability to participate in his own defense, despite the fact that he had opportunities to speak with counsel while not wearing the device. Regardless of any waiver, this failure to contemporaneously complain about the device supports the trial court's finding that Scales was not harmed by the use of the device. See *Stanford v. State*, 272 Ga. 267, 271 (8) (528 SE2d 246) (2000) (claim that trial court erred in requiring pro se defendant to wear a stun belt lacked merit, where he never raised an objection to wearing the belt); *Campbell*, supra, 333 Ga. App. at 833 (2) (trial court did not abuse its discretion by ordering defendant to wear a stun belt, where he only made one vague complaint about the belt at trial).

While Scales testified at the hearing on the motion for new trial that he was generally distracted and unable to make proper decisions at trial due to his fear of the Band-It being activated, we will not disturb the trial court's decision to credit trial counsel's contrary testimony that counsel had no problems communicating with Scales and that Scales appeared to understand and be attentive during the trial

proceedings. See *Lovelace v. State*, 262 Ga. App. 690, 697-698 (7) (586 SE2d 386) (2003) (the trial court did not err in requiring the defendant to wear a stun belt, despite his testimony that the belt prevented him from expressing himself openly, where he did not specify how wearing the belt affected his communications with trial counsel or his decision not to testify, and counsel was not aware until after the trial that the defendant had been wearing the device). Finally, Scales was informed by courthouse security of when the device would be activated and was told that he would receive a warning before any activation.

Accordingly, Scales has not shown that the trial court erred in concluding that his right to be present and meaningfully participate in his own defense was not violated by the use of the device. See *Young v. State*, 312 Ga. 71, 82-83 (16) (860 SE2d 746) (2021) (the defendant's constitutional rights were not violated by the placement of a stun belt on him at trial, despite the trial court's failure to hold a hearing on the issue, where the device did not prevent the defendant from conferring with counsel, the officers who fitted the defendant with the device explained to him the operation of the device including what would warrant it being activated and the fact that warnings would be issued before activation, and the defendant did not complain about

the device at trial). Given Scales' failure to show harm, his assertion that the trial court erred in requiring him to wear the device without holding a hearing on the issue is unavailing. See *Casas v. State*, 368 Ga. App. 434, 438 (2) (890 SE2d 308) (2023) (even if the trial court erred by failing to make certain findings regarding the use of a shock device on the defendant, any such error was not reversible because he failed to establish that he was harmed or prejudiced by the device); *Garner v. State*, 342 Ga. App. 824, 825-826 (1) (805 SE2d 464) (2017) (same).

(b) We conclude that the use of the Band-It on Scales did not violate his equal protection rights.

> Generally speaking, the guarantee of equal protection is concerned with arbitrary government classification, and it requires that the law treat similarly situated persons alike, unless adequate reason exists to treat them differently. Accordingly, to show a denial of equal protection, one first must demonstrate that the law treats him differently than similarly situated persons. If it is shown that the law, in fact, treats him differently than similarly situated persons, a court must then inquire whether adequate reason exists for doing so. Differential treatment that is based on an inherently suspect classification or that interferes with the exercise of a fundamental right is subject to strict scrutiny, and such treatment ordinarily can be justified only when it is sufficiently related to a compelling state interest. Differential treatment that neither involves a suspect classification nor interferes with a fundamental right, however,

10

is subject to less exacting scrutiny, and it generally can be justified when rationally related to a legitimate state interest.

(Citations and punctuation omitted.) *Nicely v. State*, 291 Ga. 788, 792 (2) (733 SE2d 715) (2012).

"[A] prisoner, by virtue of incarceration alone, is not a member of a suspect class for equal protection analysis." *Drew v. State*, 285 Ga. 848, 850 (2) (684 SE2d 608) (2009). And requiring incarcerated defendants to wear Band-Its at criminal trials is rationally related to the legitimate state interest in the safety and security of trials. See *Ridley v. State*, 232 Ga. 646, 649 (208 SE2d 466) (1974) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (citation omitted). It is rational to think that incarcerated defendants may pose a greater security risk at trial than defendants who have been released on bail because before a defendant may be released on bail, a court must find that he does not pose a risk of fleeing or pose a significant threat to the community. See OCGA § 17-6-1 (e) (1).

(c) We conclude that the use of the Band-It on Scales did not violate his right to be free from abuse as a prisoner.

Due process prohibits "punishment" of a pre-trial detainee, and no person shall be "abused" while under arrest. See *Long v. Jones*, 208 Ga. App. 798, 799 (1) & 800 (3) (432 SE2d 593) (1993). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" (Citation omitted.) Id. at 801 (3). Here, the Band-It was never activated, so the State did not inflict any actual physical punishment or pain upon Scales. Any mental punishment or pain caused by Scales' fear of the device being activated did not rise to the level of abuse because he did not complain about the device to trial counsel or the trial court, he was informed by courthouse security of when the device would be activated, and he was told that he would receive a warning before any activation. Further, as discussed above in Division (1) (b), the use of the device was reasonably related to the legitimate governmental objective of courtroom security. Accordingly, Scales' right to be free from abuse as a prisoner was not violated.

2. In support of his claim that trial counsel rendered ineffective assistance by failing to object to the use of the Band-It, Scales argues that while counsel testified that he was unaware of the device, courthouse security testified that they informed

12

counsel of the device, and the court failed to find whether counsel was so aware. We conclude that the court did not err in denying Scales' ineffective assistance claim.

Under the familiar standard of *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), to establish ineffective assistance of counsel a defendant "must satisfy a two-part test: that his counsel's performance was professionally deficient and that he was prejudiced by the deficient performance." *Davis v. State*, 306 Ga. 140, 143 (3) (829 SE2d 321) (2019). "Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms." (Citation omitted.) *Martin v. State*, 360 Ga. App. 1, 4 (1) (860 SE2d 582) (2021). "And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different." (Citation omitted.) Id. "Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong." (Citation omitted.) Id.

In reviewing a claim of ineffective assistance, this Court upholds a trial court's factual findings and credibility determinations unless clearly erroneous, but we review

de novo the trial court's legal conclusions. *Walker v. State*, 347 Ga. App. 163, 165 (1) (816 SE2d 849) (2018). Indeed, "the trial court, not this Court, is the judge of witness credibility, and a trial court's denial of an ineffectiveness claim based on conflicting evidence is not clearly erroneous." (Citation omitted.) *Martin*, supra, 360 Ga. App. at 4 (1).

We conclude that Scales has failed to demonstrate that trial counsel performed deficiently by not objecting to the use of the Band-It. The trial court credited and emphasized counsel's testimony that Scales did not notify him of any concerns regarding the device. We may not disturb the court's finding in this respect, nor may we disturb its findings that counsel did not perceive anything unusual about Scales' demeanor and was able to freely converse with him throughout trial. See *Martin*, supra, 360 Ga. App. at 4 (1). Given these findings, we are not convinced that the court placed any credence in the conflicting evidence indicating that counsel was aware of the device, and the court's specific findings regarding counsel's perception of and interactions with Scales support the conclusion that counsel did not perform deficiently. See id. at 6 (1) (a) (refusing to disturb trial court's credibility finding that counsel was not given the names of potential witnesses despite the defendant's

testimony that he gave the names to counsel); see also *Hughes v. State*, 296 Ga. 744, 747 (1) (770 SE2d 636) (2015) ("We usually assume that trial judges have done their job, and especially where, as here, the trial court has made extensive findings of fact, we generally must presume that the absence of a finding of a fact that would tend to undermine the conclusion of the trial court reflects a considered choice to reject the evidence offered to prove that fact[.]"). Accordingly, Scales' claim of ineffective assistance fails.

For the foregoing reasons, we affirm Scales' judgment of conviction and sentence and the denial of his motion for new trial.

*Judgment affirmed. Markle and Land, JJ., concur.*